Roy Fantozzi, Plaintiff-Appellant, v. Board of Fire and Police Commissioners of the Village of Villa Park, Illinois, et al., Defendants-Appellees.

## Gen. No. 11,553.

Second District, Second Division.

May 16, 1962.

Michael F. Ryan, of Chicago, for appellant.

Thomas A. Matthews and Byron S. Matthews, for appellee.

CROW, J.

This is an appeal by Roy Fantozzi, the plaintiff, from a judgment of the Circuit Court of DuPage County in a proceeding under the Administrative Review Act, which judgment affirmed a decision of the Board of Fire and Police Commissioners of the Village of

Villa Park discharging the plaintiff from the Police Force of that village.

The plaintiff-appellant was a police officer from October 14, 1955 until June 7, 1960, at which time he was suspended, pending the filing of charges. On May 23, 1960, Landon L. Chapman, an attorney for the plaintiff, had advised the Villa Park Police Department, by letter, that, on that date, a Petition in Bankruptcy had been filed in the U. S. District Court in Chicago by Mr. Fantozzi, and that a restraining order had been issued against Mr. Fantozzi's creditors. On June 4, 1960, William M. Holler, Chief of Police, addressed a letter to Gary McCullough, Secretary of the Board of Fire and Police Commissioners, advising that such Petition in Bankruptcy had been filed by Mr. Fantozzi and stating—"In view of this fact, it is the opinion of the Police Committee that charges be preferred against Officer Fantozzi, and if proven, he be discharged from the department." On June 7, 1960, the plaintiff was advised by Oscar Melander, Chairman of the Board of Fire and Police Commissioners that charges had been filed against him, and that a hearing would be held on June 16, 1960, the charges being preferred by Stanley B. Erlandson, Chairman of the Police Committee of the Board of Trustees of the Village, and reading as follows:

"The employee has failed to pay his debts or to make reasonable provision for paying them, to the annoyance of his superior officer or officers, and to the scandal of the service in such a way that it has affected his capacity and fitness to perform his duties."

A hearing was had, pursuant to notice, by the Board at which five witnesses testified,—three witnesses, namely, William M. Holler, Chief of Police, Stanley B. Erlandson, Chairman of the Police-Fire Committee

251

of the Board of Trustees of the Village, and Robert L. Hegel, the Village Manager, in behalf of the prosecution, and two witnesses, Roy Fantozzi, the present plaintiff, and Landon Chapman, his attorney in the bankruptcy proceeding, for the respondent, Fantozzi.

The decision of the Board of Fire and Police Commissioners after the hearing, was, in its material parts, as follows:

> "It is not the opinion of this Board that uncontrollable events such as illness represent a sufficiently large percentage of his indebtedness to warrant special consideration for this fact. It is not the intention of this Board to cause undue hardship for any individual. However, it is our responsibility to take such steps as are necessary to protect the moral fiber of the police department.

> "It is not our opinion that voluntary bankruptcy connotes a feeling or condition of illegal procedure. But in this case the facts indicate that a financially unstable individual is now holding a position of public trust and responsibility. The retention of such an individual must necessarily place a social stigma on the department and consequently impair the reputation and efficiency of the department he is attempting to represent.

> "The officer in a community of Villa Park's size is too easily identified with the police department and therefore impugns the very character of the entire department.

> "Without proper forethought Officer Fantozzi did enter upon debts beyond his ability to discharge. All the circumstances before this committee indicate that his continuance on the force would have a harmful effect on the force, would tend to

bring the department into disrepute and would be harmful to the Village.

"It is the decision of this Committee that Mr. Roy Fantozzi be discharged from the police department and he is now so discharged."

It is the contention of the plaintiff that the decision of the Board is illegal and void because it is not supported by any competent evidence showing cause for removal; the record affirmatively shows that the plaintiff paid his debts so far as he was able; there is no showing of any culpable conduct, inefficiency in service, or scandal to the service; and, contrary to the protestations of the defendants, the plaintiff was removed simply because he filed a petition in bankruptcy, an action not constituting cause for removal.

It is the theory of the defendants that there is nothing to justify reversing the judgment of the Circuit Court; the plaintiff's conduct indicates a total lack of financial understanding and responsibility; practically all his obligations were incurred in the year and half prior to his discharge, and during that time his conduct as a policeman deteriorated and the morale of other policemen was affected by the attitude of local merchants caused by the plaintiff's irresponsibility; the finding of the Board is supported by the evidence; and a complete lack of financial responsibility, with resultant harmful effect on the policeman's conduct and the morale and standing of other policemen is grounds for discharge.

Mr. Erlandson testified, omitting matters of hearsay, opinion, and other incompetent evidence, that only one complaint concerning Mr. Fantozzi was brought to him directly about a year or 18 months ago, and that he did not mention that to Mr. Fantozzi.

Chief of Police Holler testified, omitting any incompetent evidence, that any complaints he received re-

garding the indebtedness of Fantozzi would have been from a couple of his creditors about a year or more ago. It would be hard to say and he did not feel qualified to say whether the financial difficulties of Mr. Fantozzi had any bearing upon his performing his duties as a police officer. Within the past year he hadn't any communications that Fantozzi was having any financial difficulties. Quoting Chief Holler at one point,—

> "As to whether the efficiency of Officer Fantozzi has declined in any way during his five-year term, through comments from officers working with him or the sergeants on the shifts to which he was assigned—the only comment that has been made about Roy is that he'll do what he's told, and that's it. I know of no other comment on Officer Fantozzi."

He said Fantozzi was censored "a little bit" about a parking ticket incident a few months back but there was no recommendation for dismissal. He said all the complaining developed since the petition in bankruptcy. He said Fantozzi did not resort to intoxication, bribery, theft, or robbery, and is a well behaved citizen. He had not heard Fantozzi had used his position to obtain credit.

Robert L. Hegel, Village Manager, stated that after the bankruptcy petition was filed, he made an inquiry to contact the people listed as creditors of Mr. Fantozzi. He received some answers from them. He was then asked if he had any complaints about Mr. Fantozzi and his debts before the time of the bankruptcy. His answer was he didn't know of any. He did not know of Mr. Fantozzi's indebtedness prior to the bankruptcy. He had no knowledge of the conduct of Mr. Fantozzi.

Fantozzi testified, so far as is material, that his take home pay for a month is $398; that he added up five

of his payments (including contractual and some voluntary payments) on his indebtedness and those five payments total $422 a month; that when he incurred his real estate debts he didn't anticipate any doctor bills; that no suit had ever been filed against him for recovery of any of the bills; that his wife was not healthy and had had six major operations in the last 5½ years; that she consistently had to be taken care of by a doctor or by medicine; that prior to taking bankruptcy he had exhausted every effort to collect money to pay his debts; that the fact that he owed these debts had not in the least bit influenced his loyalty to the Village of Villa Park or the performance of his duties; and that he had 12 letters from local business men in Villa Park which expressed confidence in him. The record indicates that about 25% of his personal nonreal estate debts were unpaid doctor and medical bills. The petition in bankruptcy showed liabilities totalling $19,392.75, of which $17,066.79 was for installment real estate debts, mortgages, and home improvements, and $2325.96 was for other debts, and with assets of $60.50. Fantozzi said the remodelling at his home was a necessity. He said an incident about parking tickets (apparently referred to by certain other witnesses) had nothing to do with and was not caused by his indebtedness. He did not drink. He'd never been accused of robbery or bribery. No one had complained of his qualifications as an officer before the petition in bankruptcy was filed. He had made substantial payments over a period of time on his obligations.

The testimony of Fantozzi's attorney is not material at present and need not be summarized.

Under the Revised Cities and Villages Act, so far as applicable, Ch 24 Ill Rev Stats, 1959, par 14–11, ". . . no officer or member of the . . . police department of any municipality subject to this article, . . .

255

shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. . . ." Final administrative decisions of the board of fire and police commissioners thereunder are subject to judicial review by proceedings under the Administrative Review Act.

Under the Administrative Review Act, Ch 110 Ill Rev Stats, 1959, par 274, ". . . The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the Court. . . . The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct. . . ."

Where a statute provides that an officer may be removed, but only for cause and after an opportunity to be heard, the power thus granted is not an arbitrary one, to be exercised at pleasure, but only upon just and reasonable grounds; the record must show that the board of fire and police commissioners acted upon evidence and there must be evidence fairly tending to sustain the order; even if the charges might constitute a legal cause for removal the record must show proof of the facts; the board, as an inferior tribunal, does not possess unlimited and uncontrolled jurisdiction in the exercise of its powers and cannot act arbitrarily in such exercise: Funkhauser v. Coffin et al. (1922) 301 Ill 257, 133 NE 649. An administrative agency, the creature of statute, must pursue the procedure and rules laid down upon it by the legislature to give validity to its action; the hearing should adhere reasonably to the procedure ordinarily followed in controverted matters; an administrative tribunal cannot rely upon its own information for support of its findings; an order must be based upon evidence produced in the hearing; it is the duty of the Court, when called upon in a proceeding under the Administrative Review Act, to review the entire

256

record to ascertain whether or not the Board's decision and order is justified: Gigger v. Board of Fire and Police Commissioners etc. et al. (1959) 23 Ill App 2d 433, 163 NE2d 541. The rule against hearsay evidence is a basic and fundamental, and not a technical rule of evidence, and such evidence is not admissible before the Board: Novicki v. Department of Finance (1940) 373 Ill 342, 26 NE2d 130. The findings and decision of the Board may not be based upon speculation and inference,—they must be based upon facts proven by competent evidence: Campbell v. Civil Service Commission etc. et al. (1937) 290 Ill App 105, 8 NE2d 49. In an Administrative Review proceeding the Court may determine that the Board's order is not supported by substantial evidence and is against the manifest weight of the evidence: Hauswald v. Board of Education etc. (1958) 20 Ill App2d 49, 155 NE2d 319.

In City of Chicago v. Condell (1905) 124 Ill App 64, reversed on other grounds (1907) 224 Ill 595, 79 NE 954, the Appellate Court affirmed a judgment in a certiorari proceeding quashing the proceedings of a city Police Trial Board and Civil Service Commission removing and discharging a police officer. The applicable statute provided that no such person could be removed "except for cause on written charges and after an opportunity to be heard in his own defense,"—identical to the statute involved in the case at bar. The charges there were: "(Violation of Rule 69). Neglect to pay within a reasonable time a just indebtedness in violation of the book of Rules and Regulations governing the Police Department, . . ." similar, in principle, to the charges in the case at bar, and even somewhat stronger because reference was made there to a particular alleged Rule and Regulation of the Police Department and here there is no such reference, no such proof, and apparently there is no Rule and Regulation of this Police Department on the gen-

257

eral subject. The Court held the charges there set forth no cause for removal and said, pp 73, 74:

". . . The language of the Civil Service Act above quoted 'implies of course,' we said both in Joyce v. The City and in Heaney v. The City, 117 App 405, 'that the written charges must state "a cause" for removal, and that this cause must be some substantial shortcoming which renders continuance in his office or employment of the accused in some way detrimental to the discipline or efficiency of the service,'—something, as the Supreme Court of New York expressed it in construing a similar provision, 'which the law and a sound public opinion will recognize as a good cause for his no longer occupying the place.'

"We think that wide as is the latitude that should, when this is conceded, be given to the commission in their judgment of what will justify a separation from the service, the charges and specifications in the case at bar set forth no cause for removal, and gave no jurisdiction to the Civil Service Commission to try the petitioner."

· · · · · ·

". . . 'Violation of rule 69' means nothing in the absence of the rule from the return, and 'neglect to pay within a reasonable time a just indebtedness' does not exclude a perfectly honest inability to do so, resulting from unforeseen accident. That to be a dishonest debtor, a confidence man, or, in common parlance, 'a dead beat,' one, in the language of counsel for the city, 'who culpably fails to discharge a just debt after a reasonable opportunity' and with ability to do so,—is a sufficient cause for separation from the city's serv-

ice, may be conceded without any effect upon the position taken here, that the cause set forth in the case at bar was no cause at all.

"If the Civil Service Commission had power to remove petitioner for this reason, they would have the equal power to do so because he voted the Republican or Democratic ticket, or attended the Methodist or the Catholic Church."

In City of Chicago et al. v. Gillen (1906) 124 Ill App 210, the Appellate Court reached the same conclusion as in City of Chicago v. Condell (1905) 124 Ill App 64 and that case governed the Gillen case. The Court said, pp 211–212:

"A cause means some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service, and something which the law and a sound public opinion will recognize as a good cause for his no longer occupying the place. To give the Civil Service Commission the right to try the employee and decide upon his removal, there must be then some such written charge of cause against him, and this must be shown by the return, for it is on the return alone, after it is made, that the matter must be tried, and the writ dismissed or the proceedings quashed. The jurisdiction must be shown therein. In this case the alleged cause charged is, 'Neglect to pay within a reasonable time a just indebtedness, in violation of Rule 69, Book of Rules and Regulations governing the Police Department,' and the specifications which must be considered with the charge are: 'Patrolman Daniel J. Gillen neglected to pay a just indebtedness to S. B. French, Room 45, 95 Dearborn Street, within a reasonable time.'

259

"As we said in The City of Chicago v. Condell, 'Violation of Rule 69' means nothing in the absence of the rule from the return; and ' "Neglect to pay within a reasonable time a just indebtedness," does not exclude a perfectly honest inability to do so, resulting from unforeseen accident.' In the case at bar, therefore, as in the Condell case, our further language is applicable. 'That to be a dishonest debtor, a confidence man or a "dead beat," one who culpably fails to discharge a just debt after a reasonable opportunity, and with ability to do so, is a sufficient cause, may be conceded without effect upon the position taken here—that the cause set forth in the case at bar was no cause at all.'

"Counsel for appellant in the present case have argued that the word 'neglect' used, as they contend, in distinction from 'omit,' implies in its connotations, or may imply, this culpable quality in the omission which we have above alluded to as 'a sufficient cause.' We do not, however, agree with this view. The word must be considered in the connection in which it is used as wearing the meaning it would convey to the ordinary mind and as being synonymous with 'omit.' "

In Murphy v. Houston et al. (1928) 250 Ill App 385, the Court again reiterated what is meant by "cause" in a statute of the type here concerned, and said, p 394:

"While it is true that it is for the commission to decide what is cause for removal, it may not make an arbitrary and unreasonable rule in this respect. In Andrews v. King, 77 Me 224, a statute provided that an employee might not be removed except for cause. The court held cause to mean some substantial shortcoming which renders con-

260

tinuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place. This statement of the rule seems to be in harmony with the authorities."

■ Neither can any state, state or municipal law or ordinance, say that to take advantage of the national bankruptcy law is an act in and of itself affecting either the character or the conduct or capacity of a citizen, so far as they relate to his right and capacity to continue in or hold a public office,—or remove such officer from his position solely because he seeks to avail himself of the provisions of the national bankruptcy act,—such would be the infliction of an improper penalty or punishment: In re Hicks (1905) 133 F 739, DCNDNY.

In Sayles v. Board of Fire and Police Com'rs etc. (1960) 25 Ill App2d 262, 166 NE2d 469, the principal case relied upon by the defendants, the charges against the police officer were: failing to pay his personal bills, taxes, and just debts promptly, thereby causing the officials of the City of Champaign to receive many complaints from merchants and other creditors of the plaintiff; failing to pay his personal bills and just debts in violation of Rule 47 of the Police Department; bringing discredit upon himself and the Police Department, and destroying his usefulness and efficiency as a police officer; violating Rule 47 of the Rules and Regulations of the Police Department, which referred to failure to pay his personal bills and just debts, and violating Rule 50 of those Rules and Regulations providing that no policeman shall assign his salary in advance. Those charges are substantially different from the charges involved in the case at bar. Further, they involved alleged Rules and Regulations

of the Police Department and alleged violations thereof, as to which there apparently was supporting evidence. No such Rules and Regulations, no such alleged violations, and no such evidence are here involved. And that the officer had apparently violated certain Rules and Regulations of the Department was the basic ratio decidendi of that case. The evidence was not gone into in detail in the opinion but the Court concludes the decision was not against the manifest weight thereof. Nor does it appear that City of Chicago v. Condell (1905) 124 Ill App 64 or City of Chicago et al. v. Gillen 124 Ill App 210 were called to the attention of the Court. Under the circumstances we do not believe Sayles v. Board of Police etc. is applicable here.

Massey v. Fire and Police Commission etc. et al. (1960) 26 Ill App2d 147, 167 NE2d 810 and Oratowski et al. v. Civil Service Commission of City of Chicago et al. (1954) 3 Ill App2d 551, 123 NE2d 146, also referred to by the defendants, involved entirely different charges and entirely different evidence than the charges and evidence here concerned and they do not bear on the instant case.

 We do not believe the written charges here involved are sufficient "cause" for removal or discharge under the applicable statute. We do not believe the findings and decision of the Board are in conformity with the charges, even if the charges constituted sufficient "cause," and, in some respects, the findings go beyond the charges. And we believe the findings and decision of the Board are not supported by substantial competent evidence, are against the manifest weight of the competent evidence, and are not justified by the record. The charges do not state some substantial shortcoming which renders continuance of the officer in his office or em-

ployment in some way detrimental to the discipline or efficiency of the service,—they do not state something which the law and a sound public opinion will recognize as a good cause for his no longer occupying the place. There is no charge, and no evidence, that the plaintiff is a dishonest debtor, a confidence man, or, in common parlance, a "dead beat", —one who culpably fails to discharge a just debt after a reasonable opportunity, and with ability to do so. There is no competent evidence of, or any finding of, "annoyance" of his superior officer or officers,— if that somewhat vague language were "cause" under the statute, or of "scandal" to the service, or of "his capacity and fitness to perform his duties" being affected. While we do not condone or in any way mean to infer that a policeman (or anyone else) should incur debts beyond his reasonable ability to pay, we think the record points to the probability that the charges here were brought about by the filing of the plaintiff's petition in bankruptcy, not by reason of any real, proper, reasonable complaints against the officer.

We conclude, therefore, that the decision of the Board is contrary to the law and facts, and the judgment affirming it is erroneous.

The judgment is reversed.

Reversed.

WRIGHT, P. J. and SPIVEY, J., concur.