CHARLES BALDRIDGE, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION, Defendant-Appellee.

First District (5th Division)   No. 62554

Opinion filed July 1, 1977.—Supplemental opinion filed on denial of rehearing September 23, 1977.

William E. Elston, Jr., of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, the Illinois Department of Registration and Education (hereinafter Department), revoked the certificates of registration of plaintiff, Charles Baldridge, as funeral director and embalmer. Plaintiff here appeals from an order of the trial court upon administrative review which sustained the decision of the Department "revoking plaintiff's license as funeral director." On appeal he contends that the trial court erred in denying his motion to remand the cause to the Department for further proceedings, and that the decision of the trial court sustaining the Department's decision is against the manifest weight of the evidence. We affirm.

A complaint was filed with the Department against plaintiff, Charles Baldridge, d/b/a Baldridge Funeral Home. It alleged, *inter alia,* that on January 24, 1974, plaintiff and his wife went to the home of Mrs. Emma Hope at which time the murdered body of the latter's daughter was at the Cook County morgue; that Mrs. Hope signed an authorization to release the body to the Baldridge Funeral Home, which was done; that the signature was obtained by purporting the instrument to be an authorization to pick up the daughter's personal belongings; and that Mrs. Hope was unaware that the Baldridges were connected with a funeral home but believed the visit due to their daughters having been schoolmates. The complaint set forth that plaintiff's certificate of registration as funeral director and embalmer was therefore subject to revocation or suspension pursuant to the Illinois Funeral Directors and Embalmers Act (hereinafter Act) (Ill. Rev. Stat. 1971, ch. 111½, pars. 73.1 to 73.31); specifically subparagraphs (e), (j) and (m) of section 10 of article I and subparagraphs (e) and (k) of section 10 of article II of the Act, which in pertinent part provide:

"§10. The Department * * * may suspend or may revoke any [funeral director's] certificate of registration for any one or any combination of the following causes:
* * *

(e) For incompetency or untrustworthiness in the practice of funeral directing.

* * *

(j) For taking undue advantage of a patron or patrons as to amount to the perpetration of fraud.

* * *

(m) Upon a satisfactory showing or finding that there has been a solicitation of a deceased human body by the licensee * * * his or their agents * * *."

"§10. The Department * * * may suspend or may revoke any [embalmer's] certificate of registration for any one, or any combination, of the following causes:

* * *

(e) For incompetency or untrustworthiness in the practice of embalming;

* * *

(k) For taking such undue advantage of a patron or patrons as to amount to the perpetration of fraud; * * *."

A hearing was held before the board of examiners on funeral directing and embalming of the Department (hereinafter Board) on February 21, 1974. The following pertinent testimony was given at the hearing.

Mrs. Emma Hope testified. At approximately 12:45 a.m. on January 24, 1974, she was notified by the Cook County Hospital that her daughter Marie had been stabbed. Upon arrival at the hospital she was informed that Marie had died at 12:55 a.m. At about 7:15 a.m., a man and woman came to her home uninvited, subsequently identified as Mr. and Mrs. Baldridge. They told Mrs. Hope their daughter had been a friend of the deceased, but they did not identify themselves further. Mrs. Baldridge asked if there was anything she could do, but Mrs. Hope told her that her sister, Eunice Bullock, would make the funeral arrangements. Mr. Baldridge left the apartment to purchase cigarettes. Mrs. Baldridge advised her not to let her daughter's body lie in the morgue too long. She then handed her a blank piece of paper and told her that if she would sign it, she (Mrs. Baldridge) would pick up Marie's personal belongings from the morgue. She signed the paper and returned it to Mrs. Baldridge. The Baldridges then left. Thereafter Eunice Bullock arrived at Mrs. Hope's home and called the Biggs and Biggs Funeral Home to make funeral arrangements. About an hour later Mr. Biggs arrived and had Mrs. Hope sign papers authorizing the release of the body to his funeral home. Biggs later notified Mrs. Hope that the morgue had already released the body to the Baldridge Funeral Home. She called Mr. Baldridge and he told her that before he would release the body to either the family or to Biggs and Biggs, he would have to be paid $250 because she had authorized release of the body to him. Baldridge picked up Mrs. Hope and Mrs. Bullock and took them to his funeral home. She made funeral arrangements with him

then because she did not have $250 to release the body. Mrs. Hope also testified that Baldridge told her that she would have to pay $500 cash for the casket and that he would wait for another $100. He told her that the casket had to be paid for or "he would dump [her] daughter's body into a pasteboard box that he could borrow." The total cost of the funeral was $950.

On cross-examination she stated that Mr. Baldridge was not present when she signed the blank paper for Mrs. Baldridge. After the Baldridges left her home, other persons came to her home and said that their daughters had been friends of her daughter, and that they had funeral homes. She gave Mrs. Bullock permission to call Biggs and Biggs.

Mrs. Eunice Bullock substantiated the testimony of Mrs. Hope in that she had been given permission to make the arrangements with Biggs and Biggs, and also as to what transpired between Baldridge and the family of the deceased after Biggs informed them that the morgue had released the body to Baldridge.

Baldridge testified as follows. He and his wife went to the home of Mrs. Hope in response to a call from her that her daughter had been murdered. He asked his wife to take charge of the signing of the release slip and he went out to purchase cigarettes. After he obtained the body he received a call from Mrs. Bullock, who told him that she had made arrangements with Biggs and Biggs to conduct the funeral because Mrs. Hope had not made any arrangements. After he explained to her that Mrs. Hope had so authorized him, she said that she would cancel the order with Biggs and Biggs. Thereafter the family of the deceased came to his funeral home and selected a casket. He told them that based upon their selection they would have to bring in $600, that he would get $300 from welfare, and that the cemetery expenses were $50.

At the conclusion of the hearing the Board found that plaintiff solicited and obtained the fraudulent authorization from Mrs. Hope for the release of the body from the morgue, and, further, that plaintiff refused to release the body to the Biggs and Biggs Funeral Home when so requested by the next of kin, and demanded $250 for the unauthorized embalming. Based upon these findings the Board recommended to the Director of the Department that plaintiff's certificates of registration as funeral director and embalmer be revoked. The Director approved the findings of the board of examiners, concluding that plaintiff had violated the specified provisions of the Act. On May 17, 1974, the Department mailed plaintiff a copy of the findings and recommendation for revocation.

On July 1, 1974, plaintiff's new counsel filed a motion for rehearing alleging that further statements were obtained from Emma Hope and Eunice Bullock in the form of a sworn "deposition" dated July 1, 1974. On October 25, 1974, a hearing was held on the motion before the Director at

which plaintiff's counsel read portions of the July 1 statements. The written statements were received into evidence and made part of the record. Plaintiff was then questioned by the Director, and portions of the testimony from the transcript of the February board hearing were restated on the record. On November 1, 1974, the Director issued an order denying plaintiff's motion for rehearing.

On December 5, 1974, plaintiff filed a complaint for administrative review of the Department's decision. On April 10, 1975, plaintiff presented a motion to remand the cause to the Department for taking further evidence; it alleged that the Department's record of proceedings filed for administrative review did not indicate that the July 1 statements were accepted or considered by the Department for its decision. The trial court ordered that the July 1 statements, which counsel agreed had been admitted as part of the record on October 25, 1974, "be added as an additional record." On April 24, 1975, an order was entered that plaintiff's petition for rehearing be denied, and that the decision of the Department "revoking plaintiff's funeral director's license is sustained." It is from this order that plaintiff now appeals.

OPINION

On appeal, plaintiff contends that the trial court erred in sustaining the decision and in not remanding the cause for further proceedings before the Department. He argues that the decision is not supported by substantial evidence and, in particular, that it is based on an inadequate record because the July 1 statements as "additional" evidence were not before the Department to resolve a conflict in testimony.

We find that the Department proceeded on an adequate record. The hearing before the Board was conducted at the direction of the Director. Section 73.21 of the Act expressly authorizes the Board to conduct such hearings and make recommendations to the Director. The Director approved the findings by the Board based upon testimony adduced at that hearing. Thereafter, at the hearing on plaintiff's motion for rehearing, plaintiff presented the "additional" evidence before the Director and the following colloquy took place:

> "DIRECTOR STACKLER: Let me say, I am not disposed to reject it [the July 1 statements] on technical grounds, that perhaps in a court trial this would be an inappropriate remedy. I am quite sure in a court trial it would be an inappropriate way to proceed, but I am disposed to say that despite its novelty, this testimony will be considered, and in effect, what you are doing is seeking that this testimony be introduced in evidence and made part of the record, am I correct?
>
> MR. APTER [counsel for plaintiff]: Well, of course. And I

assume anything that we introduce will somehow or other be made part of the record. What we are attempting to do—

DIRECTOR STACKLER: If you would so move on the record, I would be disposed to grant that motion and let this testimony come in.

MR. APTER: Then I will formally move that the materials which we present here today, including the transcript and our letter in the nature of a motion for a rehearing, be admitted.

DIRECTOR STACKLER: All right. Any objection, Mr. Hofsommer?

MR. HOFSOMMER [technical advisor to the Department]: No objection, Mr. Director.

DIRECTOR STACKLER: I will grant the motion, and the transcript from the deposition of the witnesses taken July 1, 1974, containing the sworn statements of Emma Hope and Eunice Bullock, and consisting of 27 pages of testimony, plus the two sworn statements of the witnesses, will be admitted and made part of the record of this case."

Thereafter, Mr. Hofsommer referred to the testimony at the original hearing on February 21, 1974, citing specific statements as in complete contradiction to the July 1 statements.

Contrary to plaintiff's contention, the Director, on November 1, 1974, had before him all of the witnesses' statements when he entered the order denying a rehearing, which concludes:

"After examining the pleadings and the transcript of the proceedings heretofore had in this matter and in the absence of new evidence having been presented in the contrary, it appears to the Director that substantial justice has been done in this matter. It is hereby ordered that the Motion for a Rehearing is denied."

■■ In proceedings before administrative agencies, evidence may be sifted and analyzed by competent subordinates. (See *Des Plaines Currency Exchange, Inc. v. Knight* (1963), 29 Ill. 2d 244, 194 N.E.2d 89.) In his decision the Director may have properly considered the evidence adduced before the Board and its recommendations. Moreover, the Director specifically stated that the July 1 statements were admitted as part of the record and would be considered by him in his decision. Therefore, it may clearly be assumed that the Director was fully informed and that he proceeded on the basis of an adequate record when he found that substantial justice had been done in the matter, and denied plaintiff's motion for rehearing.

■■ In essence plaintiff's argument is that the Director erred in denying his motion for rehearing. Analogizing, we note that newly discovered evidence that a material witness testified falsely at trial may

alone be sufficient to grant a new trial. (See *Quagliano v. Johnson* (1968), 100 Ill. App. 2d 444, 241 N.E.2d 187.) Furthermore, it has been held that courts should not hesitate to grant a new trial on account of newly discovered evidence, where it is apparent or likely that it might change the result upon a retrial. *People v. Cotell* (1921), 298 Ill. 207, 131 N.E. 659; *Swiney v. Miller* (1929), 253 Ill. App. 81.

■■■ However, to evaluate plaintiff's argument that the Department erred in revoking his licenses, we must look at the July 1 statements admitted into evidence on his motion for rehearing. It is well established that this court must examine the entire record to determine whether the Department's decision is against the manifest weight of evidence. (*Dorfman v. Gerber* (1963), 29 Ill. 2d 191, 193 N.E.2d 770; *Smith v. O'Keefe* (1973), 9 Ill. App. 3d 814, 293 N.E.2d 142.) Plaintiff here argues that the statements were additional evidence and were not before the Department for consideration in reaching its final decision. However, the record before this court does not contain those very statements. In order for the exclusion of evidence to be considered by a court of review, the matter allegedly excluded must be set out in the record. *Allen v. Howard Bowl, Inc.* (1965), 61 Ill. App. 2d 314, 210 N.E.2d 342.

The duty of a court in reviewing administrative proceedings is clear. A court will not reweigh evidence, and is limited to a determination of whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. (*Fantozzi v. Board of Fire and Police Commissioners of Villa Park* (1962), 35 Ill. App. 2d 248, 182 N.E.2d 577.) Neither this court nor the trial court may substitute its judgment for that of the administrative agency. (*Davern v. Civil Service Com. of Chicago* (1970), 47 Ill. 2d 469, 269 N.E.2d 713.) To reverse a decision of an administrative agency, an opposite conclusion must be clearly evident. (*Wolbach v. Zoning Board of Appeals of Chicago* (1967), 82 Ill. App. 2d 288, 226 N.E.2d 679.) A court of review must affirm the decision of the administrative agency unless that decision is against the manifest weight of evidence. *Zinser v. Board of Fire and Police Commissioners of Belleville* (1961), 28 Ill. App. 2d 435, 172 N.E.2d 33.

■■ We have concluded that the July 1 statements were specifically received in evidence for consideration by the Department and the Director prior to reaching a final decision; furthermore, the statements were added to supplement the record in the trial court. Insofar as those statements are not in the record before this court, we cannot say that the Department's decision to revoke plaintiff's licenses and certificates of registration is against the manifest weight of the evidence; neither can we say that the order of the trial court sustaining the decision is against the manifest weight of the evidence.

Accordingly, the order of the trial court sustaining the decision of the Department is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff has filed a petition for rehearing in this case in which he tenders "his copy" of the July 1 statements. He maintains that the statements have never been available to "any of the bodies which had either the initial right to determine the evidence or the duty to review the determination."

It is clear, as fully discussed in our original opinion, that the Director had before him all statements of witnesses, including the July 1 statements. The record on appeal includes a report of the proceedings had before the Director on October 25, 1974, on plaintiff's motions for a rehearing before the Department, at which the July 1 statements were received in evidence. It further appears therefrom that extensive references were made to the statements on a page-by-page basis, including quotations and paraphrasing of the contents, and the interrogation of plaintiff concerning the statements. Furthermore, plaintiff in the trial court agreed that the statements had been made part of the record before the agency.

At the specific request of the plaintiff the trial court on April 10, 1975, entered an order which stated:

> "On motion of plaintiff, it being agreed that a sworn statement of Emma Hope and Eunice Bullock taken July 1, 1974 was admitted as part of the record on October 25, 1975 [sic]. * * *. It is ordered that the statement of Emma Hope and Eunice Bullock of July 1, 1974 be added as an additional record herein."

Therefore, it is also clear that the statements were before the trial court on April 24, 1975, when the Department's decision was sustained.

■■ ■ Nonetheless, the July 1, 1974, statements have not been included in the record before this court. The duty of an appellant to furnish a record containing material essential to the disposition of the appeal is well established. (*Perez v. Janota* (1969), 107 Ill. App. 2d 90, 246 N.E.2d 42.) This court will not reverse on speculation and conjecture; any doubt arising from an incomplete record will be resolved against the appellant. (*Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 331 N.E.2d 380.) Matters de hors the record cannot be considered. (*Perez v.*

*Janota*.) Accordingly, we cannot consider the July 1 statements which are not in the record.

The petition for rehearing is denied.

LORENZ and WILSON, JJ., concur.