Rufus Avent, Plaintiff-Appellee, v. The Police Board of the City of Chicago and O. W. Wilson, Superintendent of Police of the City of Chicago, Defendants-Appellants.

Gen. No. 49,051.

First District, Third Division.

May 28, 1964.

Rehearing denied June 19, 1964.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellants.

McCoy, Ming & Leighton, of Chicago (Ellis E. Reid, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Rufus Avent, a police officer in the service of the City of Chicago, was ordered discharged from his position in a decision of the Police Board of the City, which found that he had violated sections 4, 5, 13 and 24 of rule 374 of the Rules and Regulations of the Department of Police, entitled respectively: (1) "To be intoxicated, whether on or off duty"; (2) "Conduct unbecoming a police officer or employee of the Police Department"; (3) "Disobedience of Orders," and (4) "Making a false report." Avent filed a complaint for administrative review of the Police Board's decision. The defendants answered and with their answer filed a report of the proceedings before the board. The trial court reversed the decision of the board and ordered Avent reinstated. From this judgment the defendants, the Police Board and the Superintendent of Police appeal.

In reversing the decision of the board, the trial court found that the decision was against the manifest weight of the evidence. This is the correct rule of law to be applied in administrative review cases. The Administrative Review Act provides that: "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." Ill Rev Stats 1961, c 110, § 274.

The rule has developed from this statute that the decision of an administrative agency is not to be set aside unless it is against the manifest weight of the evidence. River Forest Bank & Trust Co. v. Zoning Board, 34 Ill App2d 412, 181 NE2d 1; Taylor v. Civil Service Commission, 33 Ill App2d 48, 178 NE2d 200. The trial court did not read the report of proceedings filed by the board. The court stated that it was his policy not to read the report in administrative review hearings; that he depended upon the attorneys to do this and to outline the evidence to him; that they could take as much time as they needed and if disputes developed he then would refer to the page in the report necessary to decide the dispute. In order to determine whether the board or the trial court was correct as to the weight of the evidence, we have carefully studied the testimony adduced at the hearing.

The charges against Avent were based upon two occurrences, one on October 9, 1961, and the other on November 15, 1961. The testimony shows that on Monday, October 9th, Avent, who was off duty, was arrested at 2:00 a. m. in the vicinity of 60th Street and Wabash Avenue in the City of Chicago by Maurice Beacham, a policeman who was also off duty. Beacham had seen an automobile with three occupants going east on 60th Street, a one-way street for westbound traffic. The auto made a sweeping left-hand turn into Wabash Avenue, ran onto the sidewalk on the east side of Wabash and stopped in the parkway between the sidewalk and the curb. Beacham's suspicions were aroused; he drew his service revolver, identified himself as a police officer, ordered the men out of the car, noticed Avent's gun and took it away from him. He observed that Avent, who was the driver of the car, appeared to be under the influence of alcohol, that he was very unsteady on his feet and

230

that his speech was slurred. At Beacham's request a citizen notified the police and Avent was taken to a police station. Beacham also went to the station, wrote up summonses for the traffic violations and, three hours after the arrest, administered a visual sobriety test to Avent.

As a result of the test Beacham again concluded that Avent was under the influence of alcohol. In his report of the test he described Avent as being indifferent, talkative and sleepy; his speech as slurred and confused; his eyes as bloodshot and his walk as "falling." Beacham testified that Avent was slow and uncertain in some of the tests, made no response to the questions asked him, but just stood mute. Beacham further testified that Avent fell to the ground when going up the steps to the station and fell from his chair twice while in the interrogation room.

Sergeant John McGuire testified that when he arrived at the scene of the arrest at 60th and Wabash he saw Avent sitting in a squad car. He noticed that Avent was incoherent and that there was an odor of alcohol in the car. He also noticed at the station that Avent was unsteady on his feet and that he slipped, stumbled or staggered on the entrance steps. Lieutenant James Lynch, who was in command of the station, stated that he was present when the sobriety test was administered, that he ordered Avent to answer the questions put to him but that Avent did not, that he appeared to be half-asleep and half-awake. Sergeant Charles O'Connor testified that he saw Avent in the station about 3:30 a. m., that he was incoherent at times and was in a more or less stupified or "dopey" condition, but appeared steady when he stood up. He was also present for part of the visual sobriety test and observed that Avent stood mute when questioned. A Breathalyzer test, given to Avent about 5:00 a. m., showed a reading of .080. Officer Joseph

Adamik, who gave the test, stated that in his opinion Avent was not under the influence of alcohol at that time. He also testified that the oxidation rate or burn-off rate of alcohol was .015 per hour.

A statement made by Avent on October 12, 1961, was received in evidence. In reference to his refusal to answer questions, he stated: "I vaguely remember . . . , maybe through exhaustion or rage of anger and I was half lit. I vaguely remember staggering. I felt tired. I could hardly open my eyes. I first felt sleepy just before I turned left on 60th going the wrong way."

Avent explained his actions as follows: he said that he drove his car east on 60th street across State Street, and failed to remember until too late that 60th street east of State was a one-way street going west; he said that as he made the left turn into Wabash he was almost hit by a southbound car and to avoid a collision drove his car onto the parkway on the east side of the street, but that he did not drive on the sidewalk; that only the two front wheels were on the parkway and he asked Beacham for permission to remove his car. (In his statement of October 12th he said he was very tired and had decided to park his car and go home; his home was at 1230 North Larrabee street, on the near north side of Chicago.) He said he had three shots of scotch, Sunday, October 8th, between 6:30 and 7:30 p. m., and that between 9:00 and 11:00 p. m. he had two or three bottles of beer. As to his falling on the way into the station, he said he anticipated the entrance door would open inwards instead of outwards and slipped on the steps when he pushed the door. He testified that he was sleepy but not intoxicated; that he had had no sleep from 6:00 p. m. Saturday until he arrived at the station Monday morning, that he had worked the Saturday night shift, had finished at 8:00 a. m. Sun-

232

day and had spent Sunday and Sunday night assisting a friend in trying to locate the friend's missing automobile. He claimed that Beacham did not give the visual test completely or as it should have been given and that he was asleep at the time the test was administered. He said he did not hear the questions because he was asleep and did not hear Lieutenant Lynch direct him to answer. (In his statement of October 12th he said he vaguely remembered not answering the questions.) As to his statement that he was "half lit," he said that he did not mean by this that he was intoxicated, that he was making a comparison to an electric light bulb and meant that he was "only half on." He charged that Beacham had a motive for arresting him because he had arrested and had given a traffic ticket to an uncle of Beacham's named Victor Carr, that after Beacham had ordered him out of his auto Beacham told him that he was going to "mess him up" because of the Carr incident.

Avent was corroborated as to what Beacham said. At his trial for the traffic violations (it was stipulated at the board hearing that these charges had been dismissed in the Municipal Court) one of his companions testified that he heard Beacham talk about Carr. The companion was not a witness at the hearing but his prior testimony was introduced. Beacham, in rebuttal, denied saying anything about Victor Carr or about messing up Avent; he said he knew Carr but that they were not related.

On November 15, 1961, Avent shot a man while he was off duty. This occurred about 1:00 a. m. in a hallway of the Tudor Hotel, 4300 Ellis Avenue, Chicago. Del Pinckney and Herbert Hammond had entered the hotel to visit a friend. Before knocking on the friend's door they stopped to have a drink and Pinckney used a knife to open the bottle. They testified that just at this moment Avent, whom they did

233

not know and who was not in uniform, came into the hallway. Avent called out: "Del Pinckney" and came toward them. As he got closer he suddenly drew his gun and shot Pinckney in the hand which was holding the bottle. At the time Pinckney's hand was near and in front of his stomach. The bottle and knife dropped to the floor. Avent arrested the two men and took them to the street where he hailed a patrol car.

Sergeant Ernest Taylor was sent to investigate the shooting. He had one squad car take Pinckney to a hospital and Hammond to the police station. He rode with Avent in another car. As they were riding Taylor noticed a slight odor of alcohol; at the station he questioned Avent about his drinking and gave him the visual sobriety test. To the question: "Have you been drinking?" Avent answered, "No." This was the basis for the charge that he had made a false report. Taylor said that the examination showed that Avent was sure in his walking, turning and balance; that his speech was fair. In Taylor's opinion Avent was not intoxicated but his action was slightly impaired from the use of alcohol. A Breathalyzer test was also administered. The reading showed .140 per cent alcohol in Avent's blood.

Avent's explanation of the November 15th occurrence was that he had been at the hotel earlier in the evening and returned to leave a message there on his way home; that in the hallway he observed the two men, one of whom had a bottle; he recognized this man as Pinckney because Pinckney had been arrested before and Avent had heard about his assaulting a police sergeant. He said that to go where he wanted to in the hotel he had to pass them; that as he approached he heard Hammond say that he was a policeman; Pinckney held the bottle as if to throw it at him and took out a knife and opened it. When

234

he saw the knife he fired his gun, but only to scare Pinckney, not to wound him.

Avent testified that he had drunk four glasses of beer over a period of an hour and a half, an hour or two before the shooting. He explained that he answered "No" to the question, "Have you been drinking?" because the question asked him was, "Have you been drinking today?" At another time he said that the question was "Were you drinking with the fellows you brought in?" In a written statement he made the same night he said he misunderstood the question; he thought it meant if he "had anything to drink since the incident?" In this same statement he corrected his first answer from "No" to "Yes." In cross-examination he said he was familiar with the form used in the sobriety test since he had given such tests himself and that he knew the question in the form was, "Have you been drinking?" He testified that at the time he was asked the question he knew that the reading on his Breathalyzer test was .140, so there was no reason for his saying he had not been drinking. Sergeant Taylor contradicted this. He testified in rebuttal that the Breathalyzer test was given after he had completed the visual test and the examination.

The board concluded that Avent was intoxicated on October 9th and on November 15th; that on October 9th he was disobedient in that he refused to obey the order of Lieutenant Lynch to answer the questions put to him in the sobriety test; that on November 15th he made a false report by giving an untruthful answer to the question about his drinking, and that all of these infractions of the Police Department Rules and Regulations amounted to conduct unbecoming an officer.

The board's conclusion on the question of intoxication was supported by the observation of those who saw Avent and those who were present when he was

interrogated. It was also partly supported by the results of the Breathalyzer tests. Although there is no statutory presumption of intoxication from readings of .080 and .140, the board could consider these readings along with all the other evidence on the subject. There is a presumption of intoxication if there is at least .150 "by weight of alcohol in the person's blood . . ." Ill Rev Stats 1961, c 95½, § 144(b). The test on October 9th was administered about three hours after Avent was arrested and he testified he had his last drink three hours before the arrest. The board could take into consideration the reading of .080, the fact that six hours elapsed between the last drink and the test, and the additional fact that a person oxidizes alcohol at a rate of .015 per hour in determining whether he had been under the influence of alcohol. Likewise, the board could add to the Breathalyzer reading of .140 the oxidation rate for each of the hours which intervened between his last drink and the test given on November 15th.

██ From the facts related, it is readily apparent that there was substantial evidence in support of each finding made by the board and that there was a fair and reasonable basis for its decision. It is not the province of a court to reweigh the evidence and it is immaterial that the court, if it heard the evidence originally, would have reached a different conclusion. It is for the administrative agency to resolve conflicting evidence and to determine where the truth lies. As long as the decision of an administrative agency is not against the manifest weight of the evidence it should not be set aside. Kohout v. Civil Service Commission of City of Chicago, 28 Ill App2d 388, 171 NE2d 683.

Avent was given a full and fair hearing and the board's decision was not against the manifest weight of the evidence. The judgment of the Superior Court

is reversed and the cause is remanded with directions to enter judgment affirming the findings and decision of the Police Board of the City of Chicago.

Judgment reversed and cause remanded with directions.

SCHWARTZ, P. J. and SULLIVAN, J., concur.