WILLIAM BASKETFIELD, Plaintiff-Appellee, *v.* POLICE BOARD OF THE CITY OF CHICAGO, Defendant-Appellant.

(No. 54989;

First District—June 28, 1972.

*Rehearing denied July 26, 1972.*

BURMAN, J., dissenting.

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen, Assistant Corporation Counsel, and Oliver D. Ferguson, of counsel,) for appellant.

Bellows, Bellows and Magidson, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Cook County reversing a decision of the Police Board of the City of Chicago. On December 11, 1967, the Superintendent of Police filed charges against William Basketfield, and a hearing was held before the Police Board on January 10, 1969. The Board found him guilty of the charges and ordered him discharged from the Department of Police of the City of Chicago. The Circuit Court of Cook County reversed the decision of the Police Board and ordered Basketfield reinstated.

The issue on appeal is whether the ruling of the trial court in reversing the findings and decision of the Police Board and reinstating the plaintiff was contrary to the manifest weight of the evidence.

On October 19, 1967, Lieutenant Basketfield of Area 2 Auto Theft received a call from Officer McCarthy, who advised him he had received information that there were tires stored at 8112 South Maryland Avenue

and suggested the garage be kept under surveillance. Basketfield assigned Detective Booker Jones to keep watch on the garage. On the same day Patrolmen Walsh and Murray received an anonymous call and went to the garage and removed a number of tires and took them to the C & D Auto Parts Company. On October 20, Walsh told Basketfield between 8:00 and 9:00 in the morning he and his partner had recovered some tires, but they did not know to whom the tires belonged. Basketfield told Walsh to follow up the investigation to determine the ownership and to inform Sergeant John Bangert what they were working on.

Later in the morning of the 20th, Officer Bangert told Basketfield that Detective Jack Muller was inquiring about the tires recovered by Walsh and Murray. Officer Bangert testified he told Basketfield no tires had been inventoried, but Basketfield stated he was not informed of that fact. Detective Muller was assigned out of Area 5 Auto Theft and was working on a case concerning the theft of a truck containing tires, which had occurred on October 10, 1967. Muller had talked to the owner of the garage at 8112 South Maryland and was told two police officers had taken the tires. After calling several police facilities in an effort to determine who might have taken the tires, Muller went to Area 2 and searched the lock-up. When he was unable to find the tires he talked with Detective Beckman, who pointed out Patrolman Walsh as being one who knew something about the tires. Muller talked with Walsh and then went out to his car and waited. Muller testified the tires were brought in by Detective Frank Lynch in a squad car about 2:22 in the afternoon.

Basketfield went to lunch around 12:00 o'clock at the Beverly House and then went on to Area 5 headquarters where he received a call from Officer Bangert about the tires. He testified he said at that time, "Well, there still shouldn't be any problem because the tires are in the lock-up in the inventory but I'll get there as soon as I finish here and we'll see what's to it."

When Basketfield returned to his office about 3:30 he talked to Jack Muller, who told him, "I've been looking all over for those tires for two weeks. I finally find the tires and nobody will give them to me." Muller told Basketfield the tires were in the lock-up but had not been inventoried. When Patrolman Walsh was asked why the tires had not been inventoried, Walsh said he thought his partner Murray had done it. Walsh asked what date should be put in the inventory book and Basketfield told him to indicate recovery on the 19th and have Sergeant Bangert sign as of the 20th.

According to the testimony of Jack Muller, upon entering his office he told Basketfield, "You knew that they were never inventoried and that

if they didn't turn up hot, you were going to sell them and cut them up between the three of you." Basketfield denied that any such conversation took place. Muller did not include such a conversation in his report of November 5.

Officer Frank Lynch testified he went to C & D Auto Parts at about 2:00 in the afternoon, the tires were loaded into the squad car by employees of C & D Auto Parts, and he arrived back at Area 2 about 2:30. He stated Lieutenant Basketfield asked him if he would go down to the I.I.D. and give a statement saying that he did not bring back the tires to keep the other two men from getting dumped. He made such a statement to the I.I.D. but said the statement was false. On cross-examination Lynch said he had been told by the State's Attorney's office he would be indicted unless he changed his story and told the truth. Lieutenant Basketfield denied he asked Lynch to make such a statement and denied he even knew why Lynch had been called in.

On Monday, October 23, Basketfield talked to Captain Lynch, who asked him to have Walsh and Murray make out a report as to how they recovered the tires. Lynch told him to keep the report until he asked for it. Basketfield said he tendered the report to Lynch on November 10, but Lynch did not accept it because he was under investigation at that time. He said he later submitted the report to the Police Department at the disciplinary board hearing when Commander Lynch was being questioned by three Deputy Chiefs in the presence of Harry Ervanian, the Department Advocate. Ervanian testified he remembers hearing a reference to the reports at that time but did not remember that Basketfield submitted the reports during the hearing.

Commander Braasch testified he had known William Basketfield since 1963 as deputy commander and he had worked for him. He considered him to be a capable supervisor and his reputation in the Police Department and in the community for honesty and integrity was good. Captain Edward Flynn testified he knew Basketfield for about seven years and his general reputation in the Police Department and in the community was excellent. Aurelio Garcia, a lieutenant of police, testified he had known Basketfield for about sixteen years and that his reputation among the members of the police and the members of the community was excellent.

No complaint had ever been filed against Basketfield previous to this incident.

In the findings and decision the Police Board found that William Basketfield was guilty of violating Rule 2 in that on or about October 19, 1967, he committed an unlawful act by knowingly obtaining and exerting unauthorized control over tires, the property of Vogue Tyre and Rubber

Company; that he failed to take reasonable measures to restore the tires to their owner and intended to deprive the owner permanently of the use and benefit of the tires; that he conspired with Patrolmen Walsh and Murray and agreed knowingly and intentionally to obtain and exert unauthorized control over a quantity of tires with the intent to deprive the property owner permanently of the use or benefit of the tires, and that in furtherance of the conspiracy assigned Murray and Walsh to investigate a report of stolen tires, and that Murray and Walsh, under color of investigation, did remove a quantity of tires and transported the tires for their own use and benefit and that of William Basketfield to a privately owned facility and did not inventory or transport the tires to the Chicago Police Department.

He was found guilty of violating Rule 6, in that on or about October 19 and 20, 1967, he did not comply with the provisions of General Order 67-21, when alleged misconduct by members of his command was brought to his attention, and he did not comply with the order of his superior issued October 23, 1967, to conduct an investigation into allegations of misconduct by members of his command.

Lieutenant Basketfield was found guilty of violating Rule 13, in that on November 4, 1967, he gave false information in an official report, and he was found guilty of violating Rule 20 in that on October 20, 1967, he had knowledge of alleged unlawful conduct of members of his command, but failed to report same to his superiors.

In reversing the decision of the Police Board, the trial court found that the decision was against the manifest weight of the evidence. The Administrative Review Act provides: "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat., ch. 110, par. 274.) In *DeGrazio v. Civil Service Commission* (1964), 31 Ill.2d 482, the court stated:

"On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findngs and decision of the administrative agency are against the manifest weight of the evidence. In this type of proceeding involving the removal of a police officer, it is the function of the court to decide if the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary, if the Commission acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. The court cannot substitute its judgment for that of the Commission."

"[N]or does the law allow a stamp of approval to be placed on the findings of an administrative agency merely because such agency heard the witnesses and made the requisite findings." *Oakdale School District v. Trustees* (1957), 12 Ill.2d 190.

We hold that the decision of the Police Board dismissing William Basketfield was against the manifest weight of the evidence.

After reviewing the entire record we find the only evidence to support the finding of the Police Board was the testimony of Detective Muller. The testimony of Detective Muller was attacked because he had destroyed certain notes which he had taken during his conversation with Basketfield. On cross-examination he testified he rewrote the notes on the 21st, tore up the originals and flushed them down the toilet. At the criminal trial of Lieutenant Basketfield, at which he was acquitted by a jury of all charges, Muller stated he destroyed the notes "because they were to be used at a pending investigation or a pending—a possible pending prosecution and it was nobody's business but mine and the State's Attorney of Cook County asked of the events that transpired." At the hearing Muller stated the above statement was the result of a typographical error. Then he admitted making the answer as read to him and then contended there might have been an omission.

Muller admitted that he made additions and corrections when he rewrote the notes, and he admitted not including references to statements he made in court.

The record shows Basketfield was not aware of the recovery of the tires until the morning of October 20. At no place in the record does it show he was aware the tires had been taken to C & D Auto Parts Company. He became aware the tires had not been entered into the inventory book either late in the morning of the 20th or late in the afternoon. Officer Bangert testified he informed Basketfield the tires had not been inventoried after Muller's second call of the morning, but Basketfield denies hearing it. When Walsh brought in the inventory book and asked what date should be placed in it, Basketfield told him to record October 19 as the date of the recovery, and told Bangert to indicate the date of his signature as the 20th, thus preserving the discrepancy. There was no attempt by Basketfield to hide anything. It should also be noted that when Detective Muller inquired about the tires at Area 2, he was told that Walsh knew about them. There was no indication Basketfield attempted to keep the discovery of the tires a secret. Likewise, there is no indication Basketfield assigned Walsh and Murray to the case. In fact, when he learned from Officer McCarthy about the garage, he assigned Detective Booker Jones to handle the surveillance.

With regard to Rules 6 and 20, the record shows Basketfield became aware of a possible wrongdoing on Friday, October 20, and he talked with his commanding officer about it on Monday, October 23. To fault the Lieutenant on this brief time lag would be capricious. Captain Lynch asked Basketfield to obtain reports from Walsh and Murray on October

23, and the reports were not tendered until November 10. But since Officer Murray was on a "baby furlough" and did not return to work until October 31, there are only ten days not accounted for. This cannot be a fatal delay because he was told to keep the reports until he was asked for them.

With regard to Rule 13, nowhere in the record is there substantial evidence Basketfield gave any false information unless the testimony of Detectives Muller and Lynch is believed. We have already dealt with Detective Muller's testimony and feel that Lynch's testimony falls in the same category because of the threat of the State's Attorney to indict him if he did not change his testimony.

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

ADESKO, J., concurs.

Mr. JUSTICE BURMAN dissenting:

I am unable to agree with the majority of the court and believe that the decision of the Police Board should be sustained because it is amply supported by the evidence.

On December 11, 1967, charges against William Basketfield were filed before the Police Board of the City of Chicago. After an evidentiary hearing the Board in a decision dated March 20, 1969, found that Basketfield had violated Rules 2, 6, 13, and 20 of the Rules of Conduct of the Rules and Regulations of the Chicago Police Department and ordered him discharged from his position as a lieutenant in the department. Basketfield then sought judicial review of the decision. The scope of review of administrative findings under the Administrative Review Act is limited since under Section 11 of the Act (Ill. Rev. Stat. 1969, ch. 110, par. 274) "The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." Where in a proceeding to discharge a police officer the charges are serious and related to the requirements of service and where the evidence fairly tends to sustain the charges, a reviewing court will not disturb the findings of the administrative agency. *DeGrazio v. Civil Service Com.*, 31 Ill.2d 482, 202 N.E.2d 522.

The majority in the instant case has not, in my opinion, followed these standards. It has instead reweighed and reevaluated the evidence and has substituted its judgment of the credibility of the witnesses and the weight to be given to the testimony for that of the Police Board.

The evidence has been set forth at length in the majority opinion;

nevertheless, it is necessary to briefly restate the facts as they pertain to the rule violations of police rules in order to demonstrate the sufficiency of the evidence to sustain the findings and decision of the Board.

Rule 2 prohibits, "Any Action Or Conduct Which Impedes The Department's Efforts To Achieve Its Goals Or Bring Discredit Upon The Department." The commission of any act of dishonesty or corruption by any member of the police department can bring the entire organization into disrepute. Allegations that police officers have violated the law and breached their public trust must be carefully examined by the department in order to ensure continued morale and discipline within and in order to maintain the confidence of the public. The essence of the Board's findings with respect to Rule 2 was that Patrolman Murray and Walsh with the knowledge and approval of Basketfield obtained and exerted control for their mutual benefit over a quantity of tires which had been stolen from the Vogue Tyre and Rubber Company with the intent to permanently deprive the owners of use of the property.

The activities of Patrolmen Murray and Walsh with regard to the tires is well documented in the record. On October 19, 1967, they removed from a garage located at the rear of 8112 South Maryland Avenue 18 tires which had been stolen from the Vogue Tyre and Rubber Company and contrary to departmental procedure deposited the tires at the C and D Auto Parts' retail facility where the tires remained until removed by another police officer on the following day. Basketfield's complicity in the actions of Murray and Walsh was shown by the testimony of Detective Jack Muller who had been assigned to investigate the robbery on October 10, 1967, of a Vogue Tyre and Rubber Company truck. Early in the morning of October 20, 1967, Muller learned that a quantity of tires had been recovered the day before by two police officers from a garage located at 8112 South Maryland Avenue. When later in the day Muller met with Basketfield, he confronted the lieutenant and stated, "Walsh said to me that you knew the tires were never brought back to the station. You knew that they were never inventoried and that if they didn't turn up hot, you were going to sell them and cut them up between the three of you." According to Muller Basketfield responded, "That's right, it is true. You are holding all the ace cards, Muller. All I can do is ask you for a break."

Basketfield's involvement with Murray and Walsh was further shown in the testimony of Officer Frank Lynch, who stated that on November 3, 1967, "I was in Lt. Basketfield's office and he said there was some trouble over the tires and would I go down—would I go down to the I.I.D. [Internal Inspection Division] and give a statement in regard to the tires I brought back. He asked me if I would go down and say I didn't bring

back the tires, to keep the other two men [Murray and Walsh] from getting dumped." The placing of the tires at C and D Auto Parts by Officers Murray and Walsh demonstrated the taking of property with the intent of permanently depriving the owner of the use of such property.

On cross-examination, Muller was impeached by prior inconsistent statements, and it was brought out that he destroyed his original hand-written notes on October 21, 1967, after making a more complete report. The destruction of these notes and the impeachment weakens Muller's testimony, but does not necessarily destroy his credibility as a witness. The same argument as is made here was presented by implication before the Board and rejected. The members of the Police Board who saw and heard the witnesses found Muller a believable witness; and this court by totally discounting his testimony is substituting its judgment as to the credibility of witnesses for that of the Police Board.

Rule 6 prohibits, "Disobedience Of An Order Or Directive, Written Or Oral." Rule 20 proscribes, "Failure To Report Promptly To The Department Any Information Concerning Any Crime Or Other Unlawful Action." With respect to these rules the Board found (1) that Basketfield had knowledge of unlawful conduct on October 20, 1967, but failed to report the same to his superiors, (2) that he did not institute an investigation of alleged misconduct known to him on October 20, 1967, in violation of General Order 67—21 and (3) that he did not comply with an order from his superior given on October 23, 1967, to conduct an investigation.

At approximately 8:30 A.M. on October 20, 1967, Basketfield according to his own testimony learned that Walsh and Murray had recovered tires from 8112 South Maryland Avenue on the preceding day. At approximately 9:40 A.M. according to the testimony of Sergeant John Bangert, Basketfield was informed that Detective Muller was looking for the tires taken from 8112 South Maryland Avenue and that there was no record of such tires being inventoried. Basketfield testified that he first learned of the failure to inventory the tires when he met with Muller in the afternoon and that he started an investigation by asking Walsh for an explanation of the failure to inventory the tires. On October 23, 1967, Basketfield was called to the office of Captain Francis Lynch and instructed to obtain written reports from Murray and Walsh, but these reports were not presented until November 10, 1967.

Basketfield knew, on the morning of October 20, 1967, that stolen property recovered by men under his command had not been inventoried, but he did not report this fact until called to the office of his superior three days later. According to his own testimony, the investigation on the day on which the information of the offense was learned consisted

simply of a single question posed to one of the alleged offenders. According to Frank Lynch, Basketfield rather than conducting an investigation attempted to cover up the facts. He acquired written reports from Murray and Walsh, but only after an 18 day delay. It is urged that this delay is reasonable because Murray was on a "baby furlough." There is, however, nothing in the record to show that during this time Murray could not have been contacted and questioned at his home in order to expedite an investigation. The evidence shows that Basketfield failed to make a timely report of the incident and failed to conduct a timely investigation in violation of departmental rules.

Rule 13 prohibits, "Making A False Report, Written Or Oral." Basketfield on November 4, 1967, made a statement at the office of the Internal Investigation Division which was in substance identical to his testimony before the Board. The Board found that Basketfield's testimony was refuted by other evidence and from this conclusion it follows that the statement of November 4, 1967, contained false information.

The Police Board heard and saw the witnesses, and it accorded Basketfield a fair and impartial hearing. It is for the administrative agency to resolve conflicting evidence and to determine where the truth lies. *Avent v. Police Board of Chicago*, 49 Ill.App.2d 228, 199 N.E.2d 637.

They were in a better position with their expertise to understand the evidence, draw inferences therefrom and determine the truth of the charges.