(No. 38368.—

Anthony DeGrazio, Appellant, vs. Civil Service Commission of the City of Chicago et al., Appellees.

*Opinion filed November 24, 1964.*

Michael F. Ryan and Richard F. McPartlin, both of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel, of Chicago, (Sydney R. Drebin and Marvin E. Aspen, Assistants Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The plaintiff, Anthony DeGrazio, a former lieutenant of police of the city of Chicago, was removed from office following a hearing before the Civil Service Commission of the city. The circuit court of Cook County reviewed the proceedings under the Administrative Review Act and affirmed the order of the Commission. The plaintiff has appealed directly to this court, a constitutional question being involved.

The charges filed against the plaintiff by the Commissioner of Police alleged that the plaintiff was guilty of conduct unbecoming a police officer and was guilty of disobedience of orders by associating and fraternizing with one Anthony Accardo, a person known to have a criminal record, in violation of Rule 309 of the Rules and Regulations of the Chicago Police Department, which provides that "No member or employee of the Department shall associate or fraternize with persons known to have criminal records." An amended charge against the plaintiff specified that he was guilty of conduct unbecoming a policeman in that he brought disgrace, disrepute and ridicule upon the police department (Rule 374(5),) by openly and flagrantly travelling from the United States to and through Europe with the said Accardo, who was alleged to be a person of ill repute in the community served by the Chicago Police Department.

The first contention advanced by the plaintiff in this court is that Rule 309 of the Chicago Police Department is invalid. It is claimed that the rule fails to define what is meant by association and fraternization; it refers to persons "known to have criminal records" without specifying whether the required knowledge is that of an individual officer, the police department, or the general public; it uses the term "criminal records" without specifying whether this means the record of an arrest or the record of a con-

viction or whether the criminal offense must be a felony or a misdemeanor; it does not specify whether one or more arrests or convictions are sufficient to constitute a criminal record; and does not specify whether the arrests or convictions need be of recent origin or of the remote past.

The evidence, which will be discussed in more detail later in the opinion, shows that Accardo had a record of 4 convictions for disorderly conduct, the earliest of which was in 1923 and the latest in 1933. The proceedings before the Commission were in 1960. Accardo's police record showed, in addition to these 4 convictions, several indictments and arrests and one acquittal by a jury on a Federal charge.

The Police Commissioner testified that in his opinion an indictment constituted a criminal record, whether the person was found guilty or not, and that he considered a man to have a criminal record whether his convictions were for felonies or misdemeanors. In this court the Commission takes the position that a conviction is not necessary to constitute a criminal record for it claims that such a record is a record relating to *prosecutions* for a State felony or misdemeanor conviction. The Commission apparently concedes that a charge of a violation of a city ordinance would not constitute a criminal record. On this point plaintiff states that numerous traffic violations which are made criminal offenses by the Uniform Act Regulating Traffic may also constitute violation of a city ordinance regulating traffic and argues that it is inconsistent to say that a violation of a State statute forbidding speeding, for example, is a criminal record while a violation of a city ordinance forbidding the same conduct is not. He also argues that it is unreasonable to consider that a person has a criminal record so as to prohibit a police officer from associating with him when the only record is a record of misdemeanor convictions, the latest of which was 26 years before the alleged association.

The rules of a police department are administrative regulations and have the force and effect of law. (*Harrison* v. *Civil Service Com.* 1 Ill.2d 137.) Therefore, they must be construed by the same standards governing the construction of statutes. (2 Am. Jur. 2d, Administrative Law, sec. 298, p. 125.) A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. (*Baggett* v. *Bullitt,* 377 U.S. 360, 12 L. ed. 2d 377, 84 S. Ct. 1316; *Hershey Mfg. Co.* v. *Adamowski,* 22 Ill.2d 36.) A further test of the validity of a law or regulation is whether it is a reasonable method to accomplish a certain objective. *Thompson* v. *Consolidated Gas Utilities Corp.* 300 U.S. 55, 81 L. ed. 510, 57 S. Ct. 364; *People ex rel. Doty* v. *Connell,* 9 Ill.2d 390.

Tested by these standards we are of the opinion that the rule is invalid. The very fact that the language of the rule is susceptible to the varying interpretations put upon it by the parties demonstrates its vagueness and we agree with the plaintiff that the rule is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. If the rule be construed in the manner in which it was construed by the Police Commissioner and the Commission, so as to prohibit association with all persons who had been arrested or indicted, regardless of whether they were acquitted, and regardless of the time of the arrest or conviction or the nature of the offense, the rule is invalid as being unreasonable and bearing no proper relation to the end sought to be accomplished. We therefore sustain the plaintiff's contention as to Rule 309.

Our holding as to the invalidity of the rule does not, however, dispose of the case. The amended charge alleged that the plaintiff brought disgrace, disrepute and ridicule upon the Police Department by openly and flagrantly travelling to and through Europe with Accardo. It was stipu-

lated at the hearing before the Commission that an airline reservation clerk would testify that Mrs. Accardo made reservations for Mr. Accardo and a Mr. Beck. Mrs. Accardo furnished the clerk with an itinerary and had the clerk make necessary hotel reservations. Another clerk would testify that two days thereafter the reservations in the name of Beck were changed to a reservation in the name of the plaintiff. An assistant manager of the airline would testify that the plaintiff and Accardo left Chicago together on a flight to London. It was stipulated that the plaintiff's wife and Mrs. Accardo left together on another flight to London and that upon their arrival the two couples stayed at the same hotel where they had a 3-room connecting suite. The entire hotel bill was paid by the plaintiff. It was stipulated that from London the plaintiff and his wife and Mr. and Mrs. Accardo travelled throughout Europe for a period of more than one month.

The Police Commissioner testified that he knew the reputation of Mr. Accardo for being a law abiding citizen in the area of the Chicago Police Department and testified that his reputation was bad. He testified that he based his opinion upon police files and records, conversations with police officers, from newspaper items and commentators on radio and television, and from the fact that Accardo had declined to answer 172 questions at a Senate committee hearing on the ground that his answers might incriminate him. He testified over objection, that the plaintiff's trip to Europe with Accardo brought disgrace, humiliation and disrespect to the Chicago Police Department and the city of Chicago. He based this opinion on news items concerning the trip, comments by radio and television commentators, telephone calls received by him and letters and protests by civic bodies.

The chairman of the Chicago Crime Commission testified that he knew Accardo's reputation of being an under-

world leader. He derived this knowledge from police files, correspondence from all over the country, newspaper accounts and other sources of information available to the Crime Commission. He also testified that the plaintiff's trip with Accardo had an adverse effect on the relation between the Chicago Police Department and the citizens of the community and had brought ridicule upon the Police Department. He testified that since the trip hundreds of citizens had talked to him about it.

A police sergeant and a police captain each testified that, based upon what they had read and heard from others, Accardo's reputation was bad. Another police captain testified that from 1952 to 1955 he was a special investigator in a police unit whose principal duties were to try to keep track of the known criminal element around Chicago. He testified that in his opinion Accardo's reputation was bad and testified that he regularly saw Accardo meeting with known criminals and hoodlums at a certain bar and restaurant. He also saw notorious criminals at parties at Accardo's home. Accounts of these parties were published in Chicago newspapers.

The chief investigator for the Attorney General testified that Accardo's reputation was bad and that the plaintiff's trip had hurt the reputation of the police department.

An exhibit was admitted in evidence consisting of a transcript of Accardo's testimony before a Senate committee, in which he declined to answer many questions as to his business, his income, his associates, and his connection with certain crimes, on the ground that his answers might incriminate him.

The plaintiff testified that he first met Accardo in 1924 when they lived in the same neighborhood. He testified that he did not attend any of Accardo's social affairs but did see him once or twice a year at a wedding or wake. He testified that shortly before the trip to Europe he received

a call from Accardo stating that Mr. and Mrs. Accardo and Mr. and Mrs. Beck had reservations for a European trip but that the Becks were unable to go. Accardo asked the plaintiff if he would like to take the Becks' reservations. The plaintiff admitted making the trip with Accardo. He testified that many times the two couples went their separate ways with the exception of staying at the same hotels. He testified that he paid all of his and his wife's expenses on the trip. On cross-examination he denied knowing anything about Accardo's reputation and denied having any knowledge of his various arrests and convictions. He admitted that he had read various newspaper accounts of a detrimental nature concerning Accardo but that he didn't believe them.

It has been stated that the police force of a community in many respects resembles a military force in that there is the same necessity of discipline and that the discharge of a police officer for conduct unbecoming to the department is not only for the purpose of punishing the officer but for the protection of the public. (*Harrison* v. *Civil Service Com.* 1 Ill.2d 137, 153.) In *Nolting* v. *Civil Service Com.* 7 Ill. App. 2d 147, the court pointed out that the Commissioner of Police must carry out and execute his authority through a chain of command. The court also noted that discipline, fairly and certainly applied, is vital to the police force, whose function it is to protect the city, not only for the members of the department, but in order to maintain the respect of the public, without which the department would become incompetent and demoralized. The court stated that it was a fair assumption that the head of the police department of the second largest city in the country was a leading expert in police matters and was in a position to judge the effect of the disciplinary action taken on the morale of the entire force. In the present case the Commissioner, the chairman of the Crime Commission, and the Attorney General's chief investigator all testified

that Accardo's reputation was bad and that the plaintiff's trip to Europe with him brought ridicule to the department. Even in the absence of these opinions as to the detrimental effect of the trip, the evidence showed that Accardo's activities, including the trip with the plaintiff, were matters of public interest. It does not require an expert opinion to establish that the plaintiff's trip with a person of Accardo's reputation would reflect adversely on the police department and subject it to disgrace and ridicule.

On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence. In this type of proceeding involving the removal of a police officer, it is the function of the court to decide if the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary, if the Commission acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. The court cannot substitute its judgment for that of the Commission. (*Etscheid* v. *Police Board of Chicago,* 47 Ill. App. 2d 124, 132.) The Civil Service Commission found that the plaintiff was guilty of conduct unbecoming a police officer by reason of his trip to Europe with Accardo, and found that by reason thereof cause existed for the plaintiff's discharge. In our opinion the finding of the Commission was not contrary to the manifest weight of the evidence. The judgment of the circuit court of Cook County affirming the order of the Commission was correct and is affirmed.

*Judgment affirmed.*