MICHAEL SCHOENBECK, Plaintiff-Appellee, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF RIVER FOREST, Defendant-Appellant.

First District (3rd Division)   No. 77-1494

Opinion filed January 17, 1979.—Rehearing denied April 12, 1979.

Charles L. Michod, Peter A. Felice, and Robert E. Grundin, all of Chicago, for appellant.

John J. Muldoon, of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Michael Schoenbeck, a member of the Police Department of the Village of River Forest, Illinois, filed a complaint for administrative review of the action of the defendant Board of Fire and Police Commissioners of the Village of River Forest (the Board) which found him guilty of violating department rules and discharging him from the department. The circuit court reversed the decision of the Board holding that it was against the manifest weight of the evidence. The Board has appealed from that order.

On January 14, 1977, the chief of police filed numerous charges against the plaintiff with the Board; the charges involved his personal relationship with Sarah Lee Losurdo, a high school resident of River Forest, and a charge that he assisted Losurdo in obtaining a false firearm owner's identification card from the Illinois Department of Law Enforcement. Schoenbeck and Losurdo presented conflicting testimony concerning the exact nature of their relationship.

Schoenbeck, married and the father of two teenage sons, testified that he first met Losurdo approximately three to four years before the hearing, when she was in grammar school. He characterized their relationship as that of "an older brother to a younger sister." He denied that he had formally dated Losurdo but admitted that she had been to his home on several occasions in the presence of his wife and sons. Losurdo, on the other hand, identified herself as Schoenbeck's girl friend and testified that they had dated approximately 150 times. She stated that she had received gifts from Schoenbeck including a lighter engraved with his initials for Valentine's Day 1976 and a diamond ring in June 1976.

Losurdo's parents and her three brothers also testified before the Board. Her mother declared that the plaintiff and her daughter usually

dated on Tuesday evenings, and that Losurdo had received gifts from him. Her father testified that in August of 1976 he confronted Schoenbeck concerning his marital status and forbade him from seeing his daughter. The plaintiff's alleged response was "Everybody makes a mistake." Michael Losurdo testified that at his 16th birthday party, he and his sister introduced Schoenbeck as "Sarah Lee's boy friend," and that Losurdo and Schoenbeck "were holding hands and they hugged each other." Michael also testified that the plaintiff had denied that he was married but that he was "living with this lady because it is a law that to be a River Forest Policeman, you have to be married." He also claimed that the plaintiff admitted purchasing the engagement ring worn by Losurdo.

Schoenbeck's wife testified on behalf of her husband. She characterized her relationship with Losurdo as that of a friend and revealed that Losurdo occasionally visited her when Schoenbeck was not present. She stated that the engraved cigarette lighter was a gift from her husband and herself. She further said she would have noticed the absence of her husband every Tuesday evening.

Sergeant Harold Blesy described an incident that occurred in the River Forest police station on December 31, 1976. It appears that this incident precipitated the filing of the charges against Schoenbeck. Blesy testified that shortly before midnight, the plaintiff was informed that he had a visitor, Losurdo, in the lobby of the station. Approximately 15 minutes later, Blesy observed Schoenbeck and Losurdo's brother Phillip shouting in the hallway. Subsequently, he observed Phillip attempting to drag his sister out of the station. Schoenbeck and Blesy approached Phillip, and Schoenbeck and Phillip resumed their argument regarding Schoenbeck's interference in the Losurdo family's problems. Schoenbeck and Phillip then conferred in private and shortly thereafter Phillip apologized to the other officers present for the disturbance and left the station. Upon learning that Losurdo was 18 years of age, Blesy instructed Schoenbeck to get her out of the station. Schoenbeck's written report concerning the evening indicated that Losurdo had argued with her mother and had been asked to leave the home.

Losurdo's father testified that at approximately 1 a.m., after receiving a call from Schoenbeck, he picked his daughter up at the station and took her home. Thereafter, Losurdo resumed her argument with her mother, again left the home and returned to the police station. Around 4 a.m. Blesy re-entered the station and voiced concern that Losurdo was still present. He informed Schoenbeck that he definitely wanted Losurdo out of the station by 6 a.m. The plaintiff testified that he called a cab company to transport Losurdo to a motel, and, following the directions of Blesy, prepared a written report regarding the incident.

At 2 p.m. that afternoon Lieutenant Richard Samuel visited the

Losurdo residence after conferring with the chief of police regarding a complaint that the plaintiff was allegedly involved in the family's dispute. He testified that he visited two motels and contacted a cab company in an attempt to locate Losurdo. Subsequently, he phoned Schoenbeck at approximately 6 p.m. to inquire as to what cab company he had called for Losurdo and what was the destination of the cab. At 6:30 p.m. Schoenbeck called the station to determine if Samuel had located Losurdo.

At 7:30 p.m. Losurdo arrived at the Schoenbeck home to attend a New Year's Eve party to which she had been invited by Schoenbeck's wife. The plaintiff claimed that he was unaware of the invitation to Losurdo. Losurdo testified that she left the party at 2 a.m. At no time did the plaintiff inform any member of the police department or the Losurdo family of Losurdo's presence at his party.

Samuel continued his investigation regarding the whereabouts of Losurdo. On January 2, 1977, Mr. and Mrs. Losurdo gave statements to the chief of police and Samuel concerning the relationship between Schoenbeck and Losurdo and blamed the plaintiff for their daughter's disappearance. The chief of police prepared and delivered a letter to Schoenbeck advising him of the possibility of formal charges against him as a result of his personal association with Losurdo. On January 3 at 8:40 p.m. Losurdo's mother telephoned Samuel to inform him that her daughter had returned home.

Schoenbeck admitted that he asked Sergeant George Straugh to notarize a blank application for a firearm owner's identification card. He insisted, however, that the application was intended for Losurdo's brother Michael and that in the presence of his wife he gave the blank application to Losurdo for her brother. Schoenbeck's wife supported his testimony. The card which was admitted into evidence contained Losurdo's picture, the name "Sara Lee Schoenbeck" and a birthdate of September 11, 1954. Losurdo was born on September 11, 1958.

Losurdo, however, testified that Schoenbeck assisted her in preparing the application for the identification card so that if she was carded with Schoenbeck it would appear that she was his wife. She stated that Schoenbeck placed her photograph upon the application and took the completed application with him. Her brother Anthony, age 13, testified that he observed Schoenbeck affixing the picture to the application in the Losurdo home. He stated:

> "When I walked in, I asked them what they were doing. And he told me that he was getting Sarah Lee a fake I.D. And he had a form and was going to say that Sarah Schoenbeck was his wife; twenty-two was going to be her age."

At the hearing Schoenbeck's attorney produced a notarized

statement signed by Losurdo addressed to the police board in which she stated that her brother had asked Schoenbeck to obtain the application for the firearm owner's identification card, that she received the application from Schoenbeck in the presence of his family, and that she completed the application herself. She also denied the accusations concerning a romantic involvement with Schoenbeck and stated "Mike and Pat have become a brother and sister to me, which I never had." At the hearing Losurdo stated that the contents of her statement were false, and that her testimony before the Board was the truth. She also revealed that she was consulting a psychologist concerning the situation. On April 4, 1977, the Board issued its findings and decision. The Board determined that Schoenbeck had violated Rules 27A and GG of the River Forest Police Department.

Rule 27A provides:

"Conduct: No member of this department shall conduct themselves in a disorderly or any other manner as to bring discredit upon this department or themselves. Members in their conduct and deportment shall be quiet, civil, and orderly and shall at all times be attentive and serious in the discharge of their duties, controlling their tempers and exercising the utmost patience and discretion. They must at all times refrain from using violent, profane and insolent language, but when required must act with sufficient force to perform their duty. They shall be civil and respectful toward each other and the general public."

Rule GG provides:

"False Reports: No member of this department shall make a misstatement or make a false report."

In addition, the Board reached the following conclusions:

(1) That for a period of approximately 14 months preceding January 1, 1977, Schoenbeck and Sarah Lee Losurdo had a personal relationship.

(2) That Schoenbeck represented himself to the family of Losurdo as a single man.

(3) That Schoenbeck continued to see and talk to Losurdo after her father had forbidden him to have any further relationships with her.

(4) That the relationship between Schoenbeck and Losurdo was responsible for an altercation which occurred at the River Forest Police Station on December 31, 1976, involving various members of the Losurdo family.

(5) That Schoenbeck obtained a cab for Losurdo to take her from the police station to a motel and failed to inform fully his superior officers or the police department of his actions.

(6) That Schoenbeck knew the whereabouts of Losurdo and failed to inform Lieutenant Samuel or the Losurdo family.

(7) That Schoenbeck induced a member of the police department to notarize a blank application for an Illinois department of law enforcement firearm owner's identification card.

(8) That Schoenbeck aided and assisted Losurdo in filling in the information on the notarized blank application knowing that the information was false.

The Board ordered Schoenbeck discharged from the police department. The circuit court, ruling on Schoenbeck's complaint for administrative review, reversed the decision holding that it was against the manifest weight of the evidence. On appeal, the issues presented for review by the Board are as follows:

(1) Whether the plaintiff's action for administrative review is fatally defective for failure to join as defendants all persons who were parties of record to the proceedings before the Board.

(2) Whether the decision of the Board discharging Schoenbeck was supported by the manifest weight of the evidence.

(3) Whether Schoenbeck's conduct constituted cause for discharge from the police department.

I

Section 8 of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 271) provides:

"In any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants."

This requirement is mandatory and specific and admits of no modification. (*Winston v. Zoning Board of Appeals* (1950), 407 Ill. 588, 95 N.E.2d 864; *Stirniman v. County Board of School Trustees* (1960), 26 Ill. App. 2d 245, 167 N.E.2d 829.) The Board contends that Schoenbeck did not meet this jurisdictional requirement by failing to name as defendants the chief of police, members of the Losurdo family and other witnesses who testified at the hearing.

■■ We do not feel that this section of the Act concerning "parties of record" mandates that all witnesses who appear before an administrative agency must be named as defendants in a subsequent action for administrative review. Cases interpreting this provision have concerned parties who had a substantial interest in the outcome of the agency's decision. *Winston v. Zoning Board of Appeals* involved a failure to name persons who were parties of record to the proceeding before the zoning board and who had supported a petition for variation which was the

subject of review. *Stirniman v. County Board of School Trustees* dealt with the annexation of land from one school district to another. The educational interests of the children of the parties who testified at the hearing concerning the annexation would have been directly affected by the outcome of the decision of the reviewing court. In *O'Hare International Bank v. Zoning Board of Appeals* (1972), 8 Ill. App. 3d 764, 291 N.E.2d 349, the court held that participants at a hearing involving the zoning of real estate were necessary defendants since they lived in the immediate vicinity of the plaintiff; otherwise, they would be deprived of the opportunity to protect their interest—the monetary value of their homes and the aesthetic level of their neighborhood—in court. In the present case the witnesses who appeared before the police board had no substantial interest in the Board's decision; therefore, it was unnecessary to name every witness as a defendant.

■ We also find that the failure to name Albert Berry, the chief of police, as a defendant did not render the plaintiff's complaint fatally defective. Although the chief of police brought the charges against Schoenbeck before the Board, he had no personal interest in the outcome of the matter. His professional interest as head of the police department in the review of the Board's decision was identical to the interest of the Board of Fire and Police Commissioners, his employer. In *Rizzo v. Board of Fire Police Commissioners* (1973), 11 Ill. App. 3d 460, 297 N.E.2d 247, the court held that in an action under the Administrative Review Act to review a policeman's discharge, the Board was the proper defendant.

## II

The second issue is whether the decision of the Board to discharge Schoenbeck was supported by the manifest weight of the evidence. We find it necessary to consider only whether the manifest weight of the evidence supported the Board's finding that Schoenbeck induced a member of the police department to notarize a blank application for an Illinois department of law enforcement owner's identification card and aided and assisted Losurdo in completing the notarized blank application, knowing that the information entered thereon was false. If this finding is supported by the manifest weight of the evidence, it is sufficient to justify the Board's dismissal of Schoenbeck from the police department.

Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 274) provides that the findings and conclusions of the administrative agency on the questions of fact shall be held to be prima facie true and correct. On administrative review, the court is not permitted to reweigh the evidence; its function is solely to ascertain whether the agency's decisions are against the manifest weight of the evidence. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202

N.E.2d 522; *Tinner v. Police Board* (1978), 62 Ill. App. 3d 204, 378 N.E.2d 1166.) The fact that the record reveals conflicting testimony alone is not sufficient to warrant a reversal of the decision of the agency. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.) It is the responsibility of the administrative agency to weigh the conflicting evidence and to determine the credibility of the witnesses. (*Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573.) In order to find that a decision is against the manifest weight of the evidence, the reviewing court must conclude that all reasonable and unbiased persons acting within the limits prescribed by law and drawing all inferences in support of the finding, would agree that the finding is erroneous. *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 378 N.E.2d 1160; *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504.

At the hearing the plaintiff testified that he had a member of the police department notarize the blank application which he gave to Losurdo. The record reveals conflicting evidence concerning Schoenbeck's involvement in the preparation of the application. Both the plaintiff and his wife testified that the blank application was given to Losurdo with instructions to deliver it to her brother Michael. Losurdo testified that Schoenbeck assisted her in completing the application and that he placed her photograph on the application. Schoenbeck's attorney, however, impeached Losurdo's testimony with her notarized statement which supported the plaintiff's version of the incident. Anthony Losurdo testified that he observed Schoenbeck placing his sister's picture upon the application, and that he admitted that he was "getting Sarah Lee a fake I.D."

■■ We find that the Board's conclusion that Schoenbeck gave Losurdo a notarized blank application and assisted her in obtaining the identification card is supported by the manifest weight of the evidence. All the testimony concerning the identification card was presented by interested parties to the hearing. It was the Board's obligation to weigh the conflicting testimony, and it appears that the Board chose to believe Anthony Losurdo's testimony rather than the testimony of the Schoenbecks. As we cannot say that all reasonable persons would find this conclusion erroneous, we cannot substitute our judgment for that of the police board. *Daniels.*

■ We also find that the manifest weight of the evidence supports the Board's finding that Schoenbeck violated Rule 27A of the River Forest Police Department. When Schoenbeck, a member of the department, influenced another member to notarize a blank application and then assisted Losurdo to fill in the form with false information as to her name and age with the purpose that it would appear that the information was given under oath in order to comply with the requirements of the

Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 83—4(a)(2)(i)), he brought discredit upon the department and himself. Rule 27A.

Schoenbeck relies on *Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478, for the proposition that the Illinois Supreme Court will permit the reviewing court to weigh contradictory evidence in determining whether a decision is supported by the manifest weight of the evidence. In *Kerr*, however, the court noted that the police board itself disbelieved part of the testimony of its own witnesses and considered this factor in applying the manifest weight test. The court did not weigh the evidence; it determined that the record did not support the agency's determination and therefore the decision was against the manifest weight of the evidence.

### III

The final issue for review is whether Schoenbeck's conduct constituted cause for discharge from the police department. No policeman may be discharged except for cause. (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17.) This court has defined cause as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good reason for his no longer holding his position. (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560; see also *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) The Board's determination of cause cannot be arbitrary and unreasonable. *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275.

The Board found that Schoenbeck induced another member of the police department to notarize a blank application for a firearms identification card, that he assisted Losurdo in filling out the form with false information and that by these actions brought discredit upon the department and himself. The Board's determination that this conduct of the plaintiff justified his dismissal from the department is neither arbitrary nor unreasonable. (*Fantozzi.*) Certainly, such action can be categorized as a substantial shortcoming which renders the continuance of the officer in his office detrimental to the discipline or efficiency of the service. (*Caliendo.*) The termination of the plaintiff's employment was warranted.

For the foregoing reasons, the order of the Circuit Court of Cook County is reversed.

Reversed.

SIMON, P. J., and McNAMARA, J., concur.