NICOLE MOTORS, INC., Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (1st Division)    No. 1—86—3052

Opinion filed March 20, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Cynthia M. Bretthauer, Assistant Attorneys General, of counsel), for appellant.

Law Offices of V.L. Milos, Ltd., of Chicago (Vivian L. Milos, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Plaintiff, Nicole Motors, Inc., filed for administrative review of the Secretary of State's decision to revoke its dealer plates. The trial court reversed the administrative decision as being against the manifest weight of the evidence. We reverse the decision of the trial court.

In 1983 the Secretary of State filed a complaint and a rule to show cause at the administrative level against the plaintiff, a used car dealer, as to why its 1983 Illinois "Dealer Certificates of Authority" and dealer plates and any subsequent renewal should not be revoked. The Secretary of State claimed that the plaintiff: (1) failed to maintain an established place of business in violation of section 5—100 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 5—100), and section 1020.10 of 92 Ill. Adm. Code of rules and regulations (92 Ill. Adm. Code 1020.10 (1985)); (2) failed to maintain required records in violation of section 5—401 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 5—401); and (3) filed fraudulent tax returns with the Illinois Department of Revenue in violation of section 5—402 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 5—402).

At the administrative hearing, the hearing officer found that the plaintiff had not shown cause why its licenses and plates should not

be revoked, made certain findings of fact and recommended that all Illinois dealer certificates of authority and dealer plates be revoked. The Secretary of State adopted the findings of fact and recommendations and revoked plaintiff's licenses and plates. Plaintiff's subsequent application for its 1984 dealer licenses and plates was denied by the Secretary of State.

Plaintiff filed for administrative review in the circuit court. After a hearing, the trial court reversed the administrative decision, ruling the Secretary of State's findings and conclusions were against the manifest weight of the evidence.

The Secretary of State appeals that decision, arguing that the circuit court applied the wrong standard of review and abused its discretion in reversing the administrative decision. It claims that the trial court was limited to the sole issue, determining whether the Secretary of State's findings and conclusions were against the manifest weight of the evidence and had no authority to reweigh the evidence.

■■■ Section 3—110 of the Administrative Review Law provides, *inter alia*, that the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) The court is not permitted to reweigh the evidence on administrative review; its function is solely to ascertain whether the agency's decisions are against the manifest weight of the evidence. (*Sheldon v. Edgar* (1985), 131 Ill. App. 3d 489, 491, 475 N.E.2d 956.) The fact that the record reveals conflicting testimony alone is not sufficient to warrant a reversal of the decision of the agency. (*Schoenbeck v. Board of Fire & Police Commissioners* (1979), 69 Ill. App. 3d 366, 372, 387 N.E.2d 738.) The administrative agency, not the court, is charged with weighing the conflicting evidence and determining the credibility of the witnesses. (*Nendza v. Board of Review of the Department of Labor* (1982), 105 Ill. App. 3d 437, 442, 434 N.E.2d 470.) To find that a decision is against the manifest weight of the evidence, the reviewing court must conclude that all reasonable and unbiased persons acting within the limits prescribed by law and drawing all inferences in support of the finding would agree that the finding is erroneous. (*Schoenbeck v. Board of Fire & Police Commissioners* (1979), 69 Ill. App. 3d 366, 372-73, 387 N.E.2d 738.) If there is substantial competent evidence to support an agency's action, the court will not disturb the agency's decision. (*Hale v. First National Bank* (1978), 57 Ill. App. 3d 310, 314, 372 N.E.2d 959.) It is well established that a reviewing court must examine the entire record to determine whether the decision is against the manifest weight of the evidence. *Baldridge v. Department of Reg-*

*istration & Education* (1977), 52 Ill. App. 3d 568, 574, 367 N.E.2d 95.

■ Pursuant to section 5—501 of the Code any license issued pursuant to the Code may be denied, revoked or suspended if the Secretary of State finds that the licensee, any officer, director, shareholder having 10% or greater ownership interest in the corporation, owner partner, trustee, manager, employee or member of the licensee has violated any provision of the Code or committed certain other transgressions. (Ill. Rev. Stat. 1985, ch. 95½, par. 5—501.) In the present case, the Secretary of State determined that the respondent had committed the following violations:

(1) Failed to maintain an established place of business as required because:

(a) the premises were not used exclusively for the business;

(b) there were no business signs; and

(c) there were no hours posted.

(2) Failed to maintain required records of the acquisition and disposal of vehicles and parts in that it:

(a) bought and sold salvaged autos without designating the components and necessary parts purchased; and

(3) Failed to maintain required records upon the issuance of Illinois temporary registration permits.

In this opinion, we will restrict our review to those issues which were raised at the administrative hearing and as to which findings of fact were made.

■■ ■ Section 5—100 of the Code requires that a dealer maintain "adequate facilities to enable the dealer to carry out warranties made to the buyers of vehicles sold and to place the vehicles in safe operating condition, but such facilities need not be on the premises, if the dealer operating the place of business provides, by written contract, for the use of and uses an established vehicle repair shop for having the warranties carried out and the vehicles placed in safe operating condition." (Ill. Rev. Stat. 1985, ch. 95½, par. 5—100.) The place of business must: (1) have the name of the dealership posted on the front entrance door; (2) have a sign setting forth the regular hours posted on the front entrance door; (3) maintain a lot for the sale of vehicles which is separate and apart from any other business (this latter requirement is not applicable where the place for business has an indoor showroom properly illuminated, for the display of vehicles held for sale); and (4) display a permanent sign bearing the name of the dealership which shall be properly illuminated if open after sundown and

which shall be visible from the highway leading to the established place of business. 92 Ill. Adm. Code 1020.10 (1985).

Officer Joseph Migliorese, the investigator for the Secretary of State, testified on direct examination that when he inspected the respondent's premises, there were no signs on the outside of the premises displaying the name of the dealership or the hours of business. He testified on cross-examination, after being shown a photograph of a window of the dealership which was not admitted into evidence, that he remembered seeing the name, address and phone number on a window of the dealership. He did not see the hours of business posted or a permanent sign. The hearing officer made a finding of fact that there were no business signs or hours posted.

Regarding the repair facilities, Officer Migliorese testified that there were facilities within the building which could be used for the repair of vehicles; however, plaintiff maintained no dealer parts or inventory and the premises were empty but for one frame with a motor. The hearing officer made a finding that the plaintiff did not maintain an inventory but made no finding as to whether there was a repair facility.

Further, the hearing officer made a finding that the plaintiff violated the administrative rules because the premises were not used exclusively for the business. Section 1020.10(a)(6) requires that, where there is no indoor showroom, an outdoor lot must be maintained separately from any other business. The premises in question had a facility for an indoor showroom, but it was not utilized. Consequently, it was a violation for the dealership to share the premises with a law office.

■ Section 5—401 of the Code specifies what type of records must be kept by used car dealers. This section requires them to maintain records of: (a) every new or used vehicle, used parts or accessories, body or engine of or for such vehicle; (b) every new or used vehicle, body, chassis or engine of or for such motor vehicle; and (c) every vehicle wrecked, dismantled or built by him. Dealers are also required to file affidavits supporting salvage certificates indicating any component parts that were added or changed on a salvage vehicle. Ill. Rev. Stat. 1985, ch. 95½, par. 5—401.

In 1982-83 the plaintiff acquired and sold 75 salvage vehicles. Its ledger listed two component parts as being bought or sold, and all of the affidavits submitted by the plaintiff stated that no component parts were charged or added. The Secretary of State relies on the records of insurance companies from which these cars were obtained which show that the cars were missing either front ends, interiors,

doors or other parts as evidence that the affidavits were inaccurate. He contends that the front ends, interiors and doors were component parts and should have been recorded as such.

■ Section 4—100 of the Code defined "parts" as any vehicle shell, essential part, component part or chassis. Section 1—118 of the Code defined "essential parts" as "all integral and body parts of a vehicle of a type required to be registered hereunder, the removal, alteration or substitution of which would tend to conceal the identity of the vehicle or substantially alter its appearance, model, type or mode of operation" (Ill. Rev. Stat. 1983, ch. 95½, par. 1—118), while section 1—228 defined "component parts" as "any part of a vehicle, other than a tire, having a manufacturer's identification number or an identification number issued by the Secretary of State." Ill. Rev. Stat. 1981, ch. 95½, par. 1—228 (repealed by Public Act 83—831, eff. Jan. 1, 1984).

Plaintiff argues that under these sections "essential" and "component" parts are only those which have vehicle identification numbers on them, those being the body, the frame, the engine. The Secretary of State relies on a 1985 amendment to the Code, which defines "essential parts" as including vehicle hulks, shells, chassis, frames, front end assemblies, front clip, rear clip, doors, hatch backs, fenders, quarter panels, deck lids, T-tops, sunroofs, moon roofs, astro roofs, transmission, engines and similar parts, to show that the interpretation offered by the plaintiff was not intended by the legislature.

■ We need not decide at this time which interpretation is correct, as we find that there was substantial evidence of other violations to support the Secretary of State's decision. The respondent does not contest that a violation of any section of the Code is grounds for denial, revocation or suspension of a dealer's license. Since there is competent evidence in the record to support the finding of fact that the dealership did not have its hours of business posted, did not have business signs, did not maintain an inventory and failed to use the premises exclusively for the business, we find that the decision of the Secretary of State was not against the manifest weight of the evidence and reverse the decision of the trial court.

Judgment reversed.

BUCKLEY and O'CONNOR, JJ., concur.