WILLIAM GRIGGS, Plaintiff-Appellant, v. NORTH MAINE FIRE PRO-
TECTION BOARD OF FIRE COMMISSIONERS *et al.*, Defendants-Appel-
lees.

First District (1st Division)   No. 1—90—0589

Opinion filed June 28, 1991.

Noel T. Wroblewski, of Combined Counties Police Association, of Barrington, for appellant.

DiLeonardi & Broihier, Ltd., of Des Plaines, and Thomas F. McGuire & Associates, Ltd., of Long Grove (John C. Broihier, of counsel), for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Plaintiff William Griggs (hereinafter Griggs), a former fire lieutenant, appeals the order of the circuit court which affirmed the administrative decision of defendant, North Maine Fire Protection Board of Fire Commissioners (hereinafter Board or North Maine Board), that found Griggs to be guilty of several acts of misconduct that occurred on the evening of February 20, 1989, and terminated him for cause.

Based on the complaint and evidence presented during the administrative hearing, the facts reveal that Griggs was employed with the North Maine Fire Department (hereinafter Department), for 14 years. On February 20, 1989, at approximately 9:30 p.m., the Department was called upon to assist a nearby community on a fire call. As part of its regular procedure, off-duty firefighters were called back to man the fire station, and Griggs was one of the persons who responded to the call-back. The call-back employees were released from duty at about 10:07 or 10:08 that evening. However, Griggs remained at the station and proceeded to engage in the acts of misconduct that resulted in his discharge. According to Griggs, he had worked a 24-hour shift on February 19 and 20 until 8 in the morning. Thus, he was tired and weak; moreover, he was sick as the result of a cold but had not been drinking that evening. Griggs contended that any remarks he made against fellow firefighters were prompted by their language

and actions toward him. The testimony given by other members of the fire department greatly contradicted Griggs' account of what occurred and will be referred to within the text of this opinion.

North Maine Board discharged Griggs, finding that he was guilty of misconduct, to wit: (1) of being under the influence of an alcoholic beverage while on duty; (2) of making and directing anti-semitic remarks toward a fellow member and lieutenant; (3) of making false and vexatious comments about the abilities of a subordinate firefighter; and (4) of insubordination in that he used abusive language toward a superior officer and that Griggs was guilty of filing a false injury report. The trial court affirmed the Board's findings of misconduct and its decision to discharge Griggs but reversed the Board's finding with regard to the filing of the injury report. The trial court also held that Griggs' due process and first amendment constitutional rights were not violated, he was afforded a fair and impartial hearing and that the North Maine Board rules complained of were not unconstitutionally vague.

■ On this appeal, Griggs raises the same issues urged before the trial court regarding the Board's administrative decisions. The standard to be applied when reviewing the decision of an administrative agency was reaffirmed in *Jakubec v. Bloomingdale Fire Protection District No. 1* (1986), 144 Ill. App. 3d 49, 493 N.E.2d 717. The court there stated:

> "The findings and conclusions of an administrative agency on questions of fact are to be considered *prima facie true and correct*. [Citation.] Consequently, a reviewing court should not reweigh the evidence and determine what is the preponderance of the evidence. [Citation.] On administrative review, the court's function is to determine whether the findings and decisions of the administrative agency are supported by substantial evidence in the record, and it may not disturb the judgment unless it is against the manifest weight of the evidence. [Citations.] In order to conclude that a finding is against the manifest weight of the evidence, the court must be satisfied that an opposite conclusion is clearly evident. [Citations.]" (Emphasis added.) *Jakubec*, 144 Ill. App. 3d at 50-51.

See also *Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 449 N.E.2d 845.

■ Once it has determined that the findings of fact of the administrative agency are supported by the evidence adduced in the proceedings, the reviewing court then must proceed to determine whether the conclusion that the particular conduct warranted dis-

charge is arbitrary. (*Martin v. Matthys* (1986), 149 Ill. App. 3d 800, 501 N.E.2d 286.) Specifically, with respect to judicial review of an administrative decision involving discipline of public employees, it is well settled that a reviewing court can not substitute its judgment for that of an administrative agency if the charges are not arbitrary or unreasonable, the evidence sustains the charges and the decision of the agency is related to the requirements of service. (*DeGrazio v. Civil Service Comm'n* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522.) Moreover, an administrative agency is accorded discretion in determining cause for discipline (*Westby v. Board of Fire & Police Commissioners* (1977), 48 Ill. App. 3d 388, 362 N.E.2d 1098), and substantial deference must be given to the commissioner's decision. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.

In applying the foregoing principles to the case at bar, we affirm the circuit court's order and likewise decline to reverse the North Maine Board's decision to discharge Griggs for misconduct. However, prior to discussing our reasons and rationale in reaching the conclusion that there is substantial evidentiary support for the Board's decision, we will dispose of the other questions raised by Griggs.

■ First, Griggs contends that the Board erred when it refused to dismiss the charges against him that he made "anti-semitic" remarks toward a fellow lieutenant and "false and vexatious complaints" to a subordinate since these allegations did not reasonably apprise him of the charges so as to allow him to prepare a defense. However, the record shows that these charges apprised Griggs of the date, time, place, individuals involved and present, and the nature of the alleged acts of misconduct (*Quinlan v. Board of Fire & Police Commissioners* (1975), 27 Ill. App. 3d 286, 327 N.E.2d 203 (abstract of opinion)) "with reasonable certainty [citation] so as to enable him to intelligently prepare his defense." *Hall v. Lyons* (1979), 71 Ill. App. 3d 1023, 1029, 389 N.E.2d 1309.

Furthermore, Griggs' attorney requested production of certain documents and was furnished discovery, including all witness statements and a report of the fire chief. It is established that charges filed in an administrative proceeding need not be drawn with the same precision required of pleadings in a judicial action. *Sudduth v. Board of Fire & Police Commissioners* (1964), 48 Ill. App. 2d 194, 198 N.E.2d 705; see also *Nelmark v. Board of Fire & Police Commissioners* (1987), 159 Ill. App. 3d 751, 756, 512 N.E.2d 1021.

Accordingly, we find that the charges here were sufficiently clear and specific to advise Griggs of the misconduct alleged; moreover, as

the charges in question also set forth the rules and regulations violated, Griggs was able to intelligently prepare a defense.

■ Griggs next asserts that the charges that he used profane language against a superior, vexatious complaints toward a subordinate and derogatory, "anti-semitic" remarks against another lieutenant are protected remarks under the first amendment either as utterances done in a private conversation or as a series of comments about "official union" matters and "health and safety" matters of concern to the public.

The controlling precedent is found in *Connick v. Myers* (1983), 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684. The Court there limited the extent to which an employee could use the first amendment as a shield from discipline and held that only statements concerning matters of legitimate public concern were entitled to any constitutional protection. The Court stated that a public employee who speaks "as an employee upon matters only of personal interest" has no greater protection than would a private employee. (*Connick*, 461 U.S. at 147, 75 L. Ed. 2d at 720, 103 S. Ct. at 1689-90.) Whether a particular statement implicates community or public concern can be determined only after an examination of the statement's content, form and context. See *Kadzielawski v. Board of Fire & Police Commissioners* (1990), 194 Ill. App. 3d 676, 681, 552 N.E.2d 331. Accord *Norton v. Nicholson* (1989), 187 Ill. App. 3d 1046, 543 N.E.2d 1053.

In the instant case, there were no members of the "general public" present when Griggs made the statements. To the contrary, the statements were made while Griggs, who was off duty because the call-backs had been released, was in an inebriated state and interrupting a shift meeting of firefighters. Our review of the record found no evidence to support Griggs' position that matters of union business were on the agenda of the shift meeting or that it was imperative at that time and place that Griggs discuss the ability or lack thereof of Elsner to fight fires. The only evidence in the record that he was prompted to make the remarks and was provoked by the men is Griggs' own testimony. However, the Board as the trier of fact was in the best position to listen to the testimony of the witnesses, assess the credibility of those witnesses and weigh the evidence.

Accordingly, we conclude that Griggs' reference to Captain Short as an "asshole," Lieutenant Goode as a "Jew cocksucker" and his repetitive and belittling comments about firefighter Elsner's firefighting abilities do not reach matters of public concern. Furthermore, Griggs' reliance on *Brawka v. Board of Fire & Police Commissioners* (1973), 9 Ill. App. 3d 879, 293 N.E.2d 348 (abstract of opinion), and *Rogenski*

*v. Board of Fire & Police Commissioners* (1972), 6 Ill. App. 3d 604, 285 N.E.2d 230, for the proposition that profane language can be protected speech is misplaced. In *Brawka,* a private conversation between a police officer and a citizen was accidentally broadcast over the police radio. Similarly, in *Rogenski,* the words "damn" and "hell" were heard over an open microphone. Here, we believe that the language involved is not of the nature which is intended to be protected; rather, it is language which can be said to impair the administration of the Department. (*Batley v. Kendall County Sheriff's Department Merit Comm'n* (1981), 99 Ill. App. 3d 622, 425 N.E.2d 1201.) The test of whether a public employee can be disciplined for his speech is whether or not the speech impairs the administration of public service. *Schafer v. Board of Fire & Police Commissioners* (1979), 69 Ill. App. 3d 677, 387 N.E.2d 976.

 ■ Griggs also challenges certain of the Board's rules as constitutionally vague on their face and violative of his due process rights. Essentially, he contends that: (1) failure to work diligently or with a bearing consistent with the image of a professional firefighter; (2) making a vexatious or unnecessary complaint; and (3) engaging in conduct on or off duty unbecoming a member or which adversely affects the morale or efficiency of the Department are rules that fail to provide him with a constitutionally required definition of the charges against him. North Maine responds that each of the rules is set forth in full in the charges, the text of the rules provide an explanation of the meaning of the charge, and that Griggs was provided with sufficient facts to define the alleged acts of misconduct. As previously discussed in this opinion, in *Quinlan,* the court determined that the use of "conduct unbecoming" charges against a police chief which stated the date and place of the alleged misconduct, the nature of the conduct being investigated and alleged that such conduct constituted conduct unbecoming a police officer were sufficient to inform the chief of his alleged acts of misconduct. *Quinlan,* 27 Ill. App. 3d at 286.

We now address the issue as to whether North Maine's findings of fact and decision to discharge Griggs are contrary to the manifest weight of the evidence. Bearing in mind that the assessment of the credibility of witnesses and the weighing of evidence are matters exclusively within the province of the trier of fact (*Nicole Motors, Inc. v. Edgar* (1989), 181 Ill. App. 3d 37, 40; *Schoenbeck v. Board of Fire & Police Commissioners* (1979), 69 Ill. App. 3d 366, 387 N.E.2d 738), we believe that North Maine's conclusions and findings are supported by the facts in the record below.

■ With respect to the Board's findings that Griggs was guilty of intoxication while on duty at the fire station on February 20, 1989, in violation of the rule which prohibits such conduct, the record reveals that two supervisors and several firefighters testified, *inter alia*, that Griggs had an "odor of alcohol on his breath"; that Griggs' speech was slurred, slower, and louder than usual; that Griggs was unable to complete a full sentence; that Griggs was unable to control his physical movements, fell against a refrigerator and had to lean on a counter to keep his balance, and "couldn't walk straight"; and that Griggs made several derogatory comments directed at several firefighters and yelled profanity at one firefighter. Griggs testified that he had consumed no alcohol that day but had taken some Nyquill for a cold. Two witnesses testified on behalf of Griggs that they never saw him stumble or slur his speech, that they did not smell alcohol on his breath and that they did not believe that he was intoxicated. However, as noted by the Board, on cross-examination, these witnesses conceded that they were not close enough to Griggs to smell his breath.

With respect to the Board's decision that the anti-semitic remarks directed against Lt. Goode in the presence of other members of the Department were violative of Department rules inasmuch as such conduct constitutes a failure to work with a bearing consistent with the image of a professional firefighter and that said off-duty conduct adversely affects the morale or efficiency of the Department, we believe that such finding is supported by the manifest weight of the evidence. Several firefighters testified that they were present in the dayroom when Griggs made the remarks and that, contrary to Griggs' testimony, Goode neither directed any bad language toward Griggs nor made any remarks, least of all derogatory remarks, about the union.

With respect to the Board's decision that Griggs' comments directed against Elsner were vexatious, belittling, demeaning and mean-spirited and in violation of Department rules, we believe that the manifest weight of the evidence supports the findings. The evidence reveals that on February 20, 1989, while in the dayroom at the fire station and while in the presence of other members of the department, Griggs repeatedly accused Elsner of being incompetent as a firefighter and afraid to participate in fighting fires. According to Elsner, Griggs appeared to be intoxicated and Elsner suggested that he remain at the station that evening. Elsner testified that Griggs got angry and repeatedly began to question Elsner as to why he was afraid to go into a fire. Other firefighters also testified that Griggs questioned Elsner about the last time he had entered or fought a fire

and that Griggs stated that he knew of 10 people who would say that Elsner was afraid to fight fires. Additionally, contrary to Griggs' testimony, the witnesses stated that Elsner did nothing to provoke Griggs.

Griggs testified that he questioned Elsner about his reluctance to participate in fighting fires because he was thinking about his duties as a lieutenant and felt an obligation to question Elsner about this issue. As stated previously, if the evidence tends to fairly sustain the charges and if the agency's decision is related to the requirements of the service, this court will not substitute its judgment for that of the administrative agency unless the charges are so trivial as to be arbitrary or unreasonable. See *DeGrazio*, 31 Ill. 2d 482, 202 N.E.2d 522.

With respect to the Board's decision that Griggs' remark against Capt. Short constitutes insubordination as disrespectful and abusive language against a person and constitutes conduct which adversely affects the morale or efficiency of the Department, we likewise believe that the manifest weight of the evidence supports the Board's findings. The Illinois Municipal Code governs the dismissal of members of the fire and police department of any municipality within its purview and mandates such a sanction be supported by cause. (Ill. Rev. Stat. 1987, ch. 24, par. 10—2.1—17.) A cause for discharge has been found to mean some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and actions which the law and good public policy recognize as good cause for his no longer holding the position. *Nation v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 384, 386-87, 352 N.E.2d 464.

It is the Board's position here that to continue the employment of Griggs, after the contemptible behavior demonstrated against his Department and his fellow officers, would seriously impair the operations and efficiency of the Department and the ability of the fire chief to maintain discipline. In *Albert v. Board of Fire & Police Commissioners* (1981), 99 Ill. App. 3d 688, 425 N.E.2d 1158, the court concluded that an officer's misconduct, viewing the "sum total" of all the incidents, may have a substantial, detrimental impact on the morale and efficiency of a department as to constitute cause for discharge. North Maine has made a similar conclusion here that the acts of misconduct engaged in by Griggs sufficiently constituted cause to terminate him. Based on our review of the evidence, we are not satisfied that an opposite conclusion is clearly evident (*Battle v. Illinois Civil Service Comm'n* (1979), 78 Ill. App. 3d 828, 831, 396 N.E.2d 1321),

and accordingly, we find no error with regard to the order of the trial court and the Board's decisions.

■ Last, Griggs contends that he was denied a fair hearing because he was not allowed to present evidence of union animus by the Department and certain firefighter personnel and evidence that Capt. Short used profanity in referring to another member of the fire department. We believe North Maine's arguments concerning this issue are persuasive and supported by the record. The record does not bear out Griggs' contention of a conspiracy to get him fired because of his union activities. The facts relevant to this case show that Griggs reported to the station for call-back duty in an intoxicated state. Although he was not scheduled to work at the time in question and was released from call-back duty, he remained at the station, went to the dayroom and by his own misconduct proceeded to interrupt a scheduled shift meeting. The record contains the testimony of union as well as nonunion firefighters who stated that Griggs engaged in specific acts of misconduct and that if any reference to the union was made on the evening in question, it was raised by Griggs. Moreover, the record is replete with assertions by Griggs that the cause for the allegations against him was union-related. With regard to the alleged derogatory remark made by Capt. Goode, the record demonstrates that during an offer of proof, a witness, Lisle Edwards, stated that he had heard Capt. Goode use profanity in reference to a deputy chief; however, such remark was made in the presence of the deputy chief, who did not object, it was done in a humorous manner, and the deputy chief did not appear to be offended by the language.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.